Fernando SANTALLAN, Appellant,

v.

The STATE of Texas, State.

No. 2–94–523–CR.

Court of Appeals of Texas,
Fort Worth.

May 9, 1996.

Rehearing Overruled June 13, 1996.

Brantley Pringle, Susan Bell, Pringle, Johnson, and Kersey, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Chuck Mallin, Assistant Chiefs of Appellate Section; C. James Gibson, Jay Lapham, Kimberly Clinkscale, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Complaining that he was denied a speedy trial and that the State called no witnesses and offered no evidence of guilt, Fernando Santallan appeals his conviction of aggravated sexual assault of a child. Santallan was sentenced to five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

A probable cause arrest warrant was issued against Santallan on June 6, 1986, but over four years passed before he was arrested on September 16, 1990. Four days after his arrest on the warrant, a criminal complaint was filed charging that Santallan committed the offense on May 15, 1985. On January 2, 1991, a grand jury indictment charged that Santallan committed the offense on May 15, 1985 against a child younger than fourteen years of age.

Santallan was released on bond, and, during the four years from February 26, 1991 through September 12, 1994, the case was set for trial thirteen times, but was not tried. Four of the thirteen were special settings. Docket entries show that Santallan's motion for speedy trial was granted on July 29, 1994 and again on September 9, 1994. Also on September 9th, his motion to dismiss the indictment because he had been denied a

speedy trial was denied. When the case was called for trial on November 1, 1994, Santallan waived arraignment and a jury and pled nolo contendere to the indictment.

Santallan's first point of error is that his constitutional right to a speedy trial was denied. Santallan argues that he has been denied a speedy trial because more than four years passed between the time a warrant was issued for his arrest and the actual arrest, and then an additional four years passed between his arrest and his trial; thus, he was tried under an allegation that was more than nine years in the past. The trial court has the authority to dismiss a case for violation of the right to a speedy trial. *State v. Johnson*, 821 S.W.2d 609, 612 n. 2 (Tex.Crim.App.1991). It makes this determination by applying a balancing test first enunciated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). The court considers four factors in its determination: 1) length of the delay; 2) reason for the delay; 3) assertion of the right to a speedy trial; and 4) prejudice to the defendant resulting from the delay. *Id.; Deeb v. State*, 815 S.W.2d 692, 704 (Tex.Crim. App.1991), *cert. denied*, 505 U.S. 1223, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992).

The first factor, length of delay, is to some extent a triggering mechanism that determines if further review is warranted. *Barker*, 407 U.S. at 530–31, 92 S.Ct. at 2192, 33 L.Ed.2d at 116–17. The calculation of delay begins only when a formal indictment, information, or actual arrest occurs. *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468, 478 (1971).[1] In cases where there is no prearrest indictment, the calculation of the delay does not include the period before the arrest. *Id.* Thus in this case, we cannot begin our calculations until the day that Santallan was arrested, September 16, 1990.

The State contends that the delay calculations should start in July of 1994 because trial was reset several times and "[t]here is no evidence that Appellant objected to any of these resets before filing a motion for speedy

---

1. The *Marion* court noted that limitations statutes protect defendants from a lack of prearrest diligence on the part of the State. *Marion*, 404 U.S. at 322, 92 S.Ct. at 464, 30 L.Ed.2d at 479.

trial on July 25, 1994." We disagree. On August 18, 1994, Santallan filed a motion to dismiss for denial of a speedy trial. The motion states "[o]n July 14, 1992, defendant orally complained through his attorney of the delays in going to trial, and requested a special setting. This case was specially set for trial in this court on October 18, 1992." On July 14, 1992, a notation in the docket states "Case to be special [sic] set for trial." On October 2, 1992 a docket notation reads "TRIAL DOCKET CALL FOR OCT 19 1992 Special Trial Setting. RESET: NOT REACHED THIS WEEK." There is no conclusive evidence as to why the trial set for October 19, 1992 did not proceed as scheduled.

The written motion to dismiss for denial of a speedy trial placed the State and the trial court on notice that Santallan was contending that a speedy trial was requested in 1992. In the September 9, 1994 hearing on the motion, the State alleged that "not until July 25th of 1994 did the defense file a motion for speedy trial." Santallan's counsel contested this allegation, stating: "Your Honor, I had requested a speedy trial before orally and the Court had given us special settings." The trial court acknowledged these facts, and the State never again raised the issue until filing their brief for this appeal.

Because these allegations were uncontested at the speedy trial hearing, we will accept them as evidence that Santallan did not receive his trial until more than two years after he first requested a speedy trial. Consequently, we find that the delay in question triggers our examination of the other three *Barker* factors.

■ In *Barker*, the Supreme Court listed three different categories for delay that courts must weigh when making a speedy trial determination: a deliberate attempt by the State to hamper the defense, negligence by the State or overcrowding of the courts, and a valid reason for delay. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The delay in the instant case appears to fall in the middle of the three category

spectrum—negligence on the part of the State as well as overcrowding at the trial court. The State's negligence weighs in Santallan's favor in this case, but it cannot be considered sufficient in and of itself for a finding of a deprivation of the right to a speedy trial. *Id.*

As noted in our discussion of the length of delay, the record is not completely clear concerning the third factor, assertion of the right to a speedy trial. We find that Santallan asserted his right to a speedy trial on at least two occasions: first on July 14, 1992, and finally in a written motion on July 25, 1994. Between the first motion and the final motion, the trial was reset on four or five separate occasions.[2] Santallan has produced no conclusive evidence as to why the trial was reset on these occasions.

Santallan first reasserted his right in his July 25 motion, which the trial court granted. In the September 9th hearing to dismiss for denial of a speedy trial, the trial court confirmed that the trial had been set for September 12 and told both sides that the trial would take place after a murder case also set for that day. Santallan eventually pled nolo contendere on November 1, 1994.

■ The *Barker* Court held that the manner in which the right is asserted (or is not asserted) is a factor that weighs in the decision as to whether the defendant is entitled to relief. *Id.* at 528–29, 92 S.Ct. at 2191, 33 L.Ed.2d at 115–16. The primary burden to bring a defendant to trial remains with the courts and prosecutors. *Id.* at 529, 92 S.Ct. at 2191, 33 L.Ed.2d at 116. However, despite this burden, a defendant's actions can waive his right to a speedy trial. *Id.* While we find that Santallan asserted his right, there is no evidence of continued objection to the trial court's numerous resets of the case after the initial assertion. *State v. Kuri*, 846 S.W.2d 459, 463 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd), *cert. denied,* —— U.S. ——, 114 S.Ct. 1064, 127 L.Ed.2d 384 (1994). Thus, we find that Santallan's failure to con-

---

**2.** June 21, 1993, February 28, 1994, April 11, 1994, May 23, 1994 and possibly on July 18, 1994.

tinually assert his right weighs against him in our analysis.

The fourth *Barker* factor is prejudice to the defendant. At the speedy trial hearing, the State argued that Santallan had to show the prejudice he suffered. We have reviewed the record, and Santallan made no affirmative showing of prejudice. Santallan contends that under the holding of *Doggett v. United States,* the length of time between the State's issuance of the arrest warrant and the date of trial created a presumption of prejudice to him. 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

In *Doggett,* the Supreme Court departed from previous rulings, and held that there can be a presumption that a defendant is prejudiced by a sufficiently lengthy delay. *Id.* at 655, 112 S.Ct. at 2692–93, 120 L.Ed.2d at 531. The *Doggett* Court noted that Doggett "came up short" in making "any affirmative showing that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." *Id.* at 655, 112 S.Ct. at 2692, 120 L.Ed.2d at 530. Nevertheless, the Court noted that consideration of prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential to every claim. *Id.* (citing a brief); *Moore v. Arizona,* 414 U.S. 25, 26–27 & n. 2, 94 S.Ct. 188, 189–90 & n. 2, 38 L.Ed.2d 183, 183 & n. 2 (1973); and *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Furthermore, the *Doggett* Court pointed out that *Barker* recognized that impairment of one's defense is the most difficult form of prejudice to prove, so excessive delay (in that case, more than eight years from indictment to trial) presumptively compromises the reliability of a trial in ways that can't be proved or identified. *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2692, 120 L.Ed.2d at 530 (citing *Barker,* 407 U.S. at 532, 92 S.Ct. at 2192–93, 33 L.Ed.2d at 118). While such presumptive prejudice cannot carry a speedy trial claim without regard to the other *Barker* factors, it is part of the relative facts, and its importance increases with the length of delay. *Doggett,* 505 U.S. at 655–56, 112 S.Ct. at 2693, 120 L.Ed.2d at 531.

While similar on the surface, the facts in the instant case are distinguishable with those from *Doggett.* Most importantly, Doggett had been indicted at the very beginning of the State's case against him, but was never arrested. In Santallan's case, the State issued an arrest warrant on probable cause, not on the basis of an indictment. As we noted in our previous examination of the *Barker* "length of delay" factor, an analysis of this time period does not begin upon the issuance of an arrest warrant, but only upon actual arrest, indictment, or other formal charge.

While the nine years that passed from the time of the alleged offense appears presumptively prejudicial, the proper analysis negates the four years which passed before his arrest. Considering his late and inconsistent assertion of his right, we give even less weight to any prejudice that Santallan may have suffered until he initially asserted the right. In weighing all four of the *Barker* factors, we find that his failure to continuously assert his right pervades and predominates the prejudice he might have suffered. We overrule his first point of error.

■ Santallan's second point of error complains that no evidence of guilt was introduced at his trial. It is necessary for the State to introduce evidence into the record showing the guilt of a defendant. TEX.CODE CRIM.PROC.ANN. art. 1.15 (Vernon Supp.1996). The trial court is required to accept that evidence as the basis for its judgment, and in no event shall an accused be convicted upon his plea without sufficient evidence to support same. *Id.*

■ In reply to Santallan's second point of error, the State argues that we have no jurisdiction over this appeal, because the notice of appeal does not show that the trial court gave Santallan permission to appeal from his nolo contendere plea on grounds of insufficient evidence. The State cites our recent opinion, *Martinez v. State,* 906 S.W.2d 651, 653 (Tex.App.—Fort Worth 1995, pet. filed), where one ground for appeal was that the evidence was *insufficient* to support his plea of nolo contendere. In *Martinez,* we determined that Martinez had not preserved

the insufficiency point for our review because he had not complied with rule 40(b)(1) of the Texas Rules of Appellate Procedure, which states in pertinent part:

Appeal is perfected in a criminal case by giving timely notice of appeal.... Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment ... but if the judgment was rendered upon his plea of guilty or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, *in order to prosecute an appeal for a nonjurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial....*

Tex.R.App.P. 40(b)(1) (emphasis added).

Because we found that Martinez's notice of appeal did not include the statements necessary to properly preserve his insufficiency point for review on appeal, we held that we had no jurisdiction to consider whether the evidence to support his nolo contendere plea was sufficient. *Martinez,* 906 S.W.2d at 654.

Santallan's notice of appeal also does not include the required statements. But, contrary to Martinez' *insufficiency* of evidence point, Santallan's point is that when his case was called for trial and he entered his nolo contendere plea, the State introduced *no evidence whatsoever.* The rule 40(b)(1) requirement for trial court permission is based on a judgment that is rendered "upon his plea of guilty or nolo contendere pursuant to Article 1.15." Tex.R.App.P. 40(b)(1). Article 1.15 states that "it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea

without sufficient evidence to support the same." Tex.Code Crim.Proc.Ann. art. 1.15 (Vernon Supp.1996). A plain reading of rule 40(b)(1) indicates that if no evidence has been adduced to show a defendant's guilt, then the plea cannot have been made pursuant to article 1.15 of the Code of Criminal Procedure, and thus the dependent clause of rule 40(b)(1) requiring permission of the trial court would not apply.

Nevertheless, in no less than three cases the Court of Criminal Appeals has ruled that such a plain reading of rule 40(b)(1) is erroneous. *See Rhem v. State,* 873 S.W.2d 383, 384 (Tex.Crim.App.1994); *Lyon v. State,* 872 S.W.2d 732, 734–36 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 816 (1994); *Davis v. State,* 870 S.W.2d 43, 46 (Tex.Crim.App.1994). In light of the Court's decision in *Rhem* where the appellant apparently claimed that "the State failed to offer any evidence to support the judgment of the trial court," it appears immaterial whether the State offers "insufficient evidence" or "no evidence" at all. *Rhem,* 873 S.W.2d at 384. Constrained as we are by the Court of Criminal Appeals interpretation of the rules, we must hold that we are precluded from reviewing this point of error due to Santallan's failure to obtain the trial court's permission for our review.[3] Point of error two is dismissed. The judgment of the trial court is affirmed.

DAUPHINOT, J., concurs with opinion.

DAUPHINOT, Judge, concurring.

As the majority opinion correctly points out, the State in this case introduced *no evidence whatsoever.* The record contains no testimony, document, stipulation, or other evidence tending to show Santallan's guilt beyond a reasonable doubt or even that a crime was committed. While any evidence produced by the State would have made Santallan's appeal an insufficiency appeal and thus barred,[1] the State, in the case before us,

---

3. To convict without any evidence whatsoever and then deny appeal on the ground that the trial court did not give its permission, seems to lack basic fairness and to be fundamentally unjust. Our reading of the Court of Criminal Appeals' rulings, however, require such a result.

1. *See Lyon v. State,* 872 S.W.2d 732, 734–36 (Tex.Crim.App.1994).

offered absolutely no evidence to prove Santallan's guilt. Consequently, the judgment was not rendered pursuant to Article 1.15 of the Code of Criminal Procedure.[2] Article 1.15 is very clear that "in no event shall a person charged be convicted upon his plea *without sufficient evidence to support the same.*"[3] Thus, although Rule 40(b)(1) of the Texas Rules of Appellate Procedure establishes the prerequisites for appealing an article 1.15 guilty plea, these requirements do not apply in this case because Santallan's plea was not made pursuant to article 1.15.[4]

Moreover, where there is no evidence upon which to base a conviction, a violation of due process has occurred.[5] Because error is fundamental when an accused is convicted without any evidence whatsoever to support a key element of the offense,[6] justice requires our review even when the Appellant fails to assign a "no evidence" point.[7] Although in *Helms v. State* the Court of Criminal Appeals held that "where a plea of guilty is voluntarily and understandingly made, all nonjurisdictional defects including claimed deprivation of federal due process are waived,"[8] due process is inherent to the voluntariness of a confession. In other words, without due process requiring that the State put on some evidence of the defendant's guilt, there has not been a "knowing and voluntary" plea.

The Court of Criminal Appeals has held that the ability to appeal is limited by rule 40(b)(1) even when the State fails to provide sufficient evidence to support the plea of guilty or nolo contendere as required by article 1.15.[9] In so doing, the Court of Criminal Appeals has decided to elevate a rule of appellate procedure above the Code of Criminal Procedure and the Due Process and Due Course of Law provisions of both the federal and state constitutions.

Because we are merely an intermediate appellate court we are bound by the decisions of the highest state court. We may, nevertheless, inquire whether an appellate rule of procedure should displace existing law espousing the concept of fundamental fairness which requires some evidence to support each element of the offense alleged when a defendant pleads guilty or nolo contendere. Because current caselaw requires this course, I reluctantly concur.

**2.** TEX.CODE CRIM.PROC.ANN. art. 1.15 (Vernon Supp. 1996).

**3.** *Id.* (emphasis added).

**4.** TEX.R.APP.P. 40(b)(1).

**5.** *Ex parte Coleman,* 599 S.W.2d 305, 307 (Tex. Crim.App. [Panel Op.] 1978).

**6.** *Gonzalez v. State,* 588 S.W.2d 574, 575 n. 1 (Tex.Crim.App. [Panel Op.] 1979) (op. on reh'g).

**7.** *Cruz v. State,* 629 S.W.2d 852, 858 (Tex.App.—Corpus Christi 1982, pet. ref'd).

**8.** 484 S.W.2d 925, 927 (Tex.Crim.App.1972).

**9.** *See Rhem v. State,* 873 S.W.2d 383, 384 (Tex. Crim.App.1994).