

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00196-CR

VERONICA ROLDAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2009-C-0128

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After a jury convicted Veronica Roldan of aggravated assault, she was sentenced to nine years' confinement in prison. In her sole point of error on appeal, Roldan argues that the trial court erred when it denied her motion to dismiss the indictment based on an alleged violation of her right to a speedy trial. We find the trial court did not err in declining to dismiss the indictment because her right to a speedy trial was not violated. Accordingly, we affirm the trial court's judgment.

## I.    The Trial Court Did Not Err in Declining to Dismiss the Indictment

### A.    Timeline

Roldan was arrested on April 29, 2009, for the April 26, 2009, aggravated assault of Michelle Adams. On June 23, 2009, Roldan filed numerous pretrial motions, including a motion in limine, a motion to suppress, and a motion for discovery. On December 17, 2009, Roldan filed an "announcement of not ready," stating that she was not prepared for trial, which had been set for jury selection on January 25, 2010. On December 17, 2010, the case was continued and set for the entry of a guilty plea on January 7, 2011. Apparently, the guilty plea never came to fruition, and on April 15, 2011, both sides announced they were ready for trial.

About seven years later, on February 6, 2018, the trial court issued a notice, ordering Roldan to appear in court for arraignment on February 27, 2018.[1] In that same notice, the trial court set a jury trial to commence on June 11, 2018. Roldan failed to appear on February 27, 2018, and the trial court issued a capias for her arrest. On March 23, 2018, Roldan was arrested and, on

---

[1]In 2017, a newly-elected judge took the bench.

March 26, 2018, the trial court held a bond hearing. Roldan's original bond was reinstated, along with the same conditions.

On May 23, 2018, the trial court entered an order granting Roldan's motion to substitute counsel. On July 12, 2018, Roldan appeared in court, and an agreed discovery order was entered the next day, setting a trial date of September 24, 2018. The record also shows the trial court "excused" Roldan from court proceedings until September 13, 2018.

On September 13, 2018, Roldan filed her motion to dismiss for violation of her right to a speedy trial, and on September 20, 2018, she filed a brief in support of her motion. On that same day, the trial court denied her motion. Trial began on September 24, 2018. During trial, Roldan re-urged her motion to dismiss. The trial court held a brief hearing, considered Roldan's testimony and arguments of counsel, and, again, denied her motion.[2]

After the jury found Roldan guilty of aggravated assault, she was sentenced to nine years' confinement in prison. In her sole point of error on appeal, Roldan argues that the trial court erred when it denied her motion to dismiss the indictment based on an alleged violation of her right to a speedy trial.

**B.  Standard of Review**

"The Sixth Amendment to the United States Constitution provides, in relevant part, that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial.'" *Nguyen v. State*, 506 S.W.3d 69, 77 (Tex. App.—Texarkana 2016, pet. ref'd) (quoting U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972)). "That right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment." *Id*. (citing U.S. CONST. amend. XIV;

---

[2]Roldan also filed a sworn statement that echoed the testimony she gave during the hearing on her motion.

*Klopfer v. N. Carolina*, 386 U.S. 213, 223–26 (1967)). "The Texas Constitution likewise provides that . . . 'the accused shall have a speedy . . . trial.'" *Id.* (quoting TEX. CONST. art. 1, § 10).

The right to a speedy trial cannot be quantified in days or months. *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Thus, Texas courts "analyze federal constitutional speedy-trial claims 'on an ad hoc basis' by weighing and then balancing the *Barker v. Wingo* facts." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). In executing the balancing test, "[t]he court should inquire about (1) the length of the delay, (2) reasons for the delay, (3) the circumstances of the defendant's assertion of the right, and (4) any prejudice that resulted from the delay." *Nguyen*, 506 S.W.3d at 77 (citing *Barker*, 407 U.S. at 530). No one factor is determinative, and all factors must be considered together along with relevant circumstances on a case-by-case basis. *Cantu*, 253 S.W.3d at 281.

"When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review." *Nguyen*, 506 S.W.3d at 77 (citing *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd)). "[W]e review legal issues de novo[,] but give deference to a trial court's resolution of factual issues." *Id.* (quoting *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345). "We review a speedy trial claim in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Id.* (citing *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345). Under an abuse of discretion standard, we defer to the trial judge's resolution of facts and reasonable inferences drawn

therefrom, and we review the evidence in a light most favorable to the ruling. *Cantu*, 253 S.W.3d at 282.

### C.    Analysis

#### 1.    The Length of Delay

The *Barker* test is triggered by a delay that is unreasonable enough to be considered presumptively prejudicial. *Barker*, 407 U.S. at 281. This first factor, however, includes a double inquiry. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). A court first "must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length."[3] *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017).

Roldan was arrested on April 29, 2009,[4] for the aggravated assault of Michelle Adams.[5] Her trial began on September 25, 2018. The nine-year delay stretches well beyond the triggering length and is presumptively prejudicial.[6] *See Barker*, 407 U.S. at 281 (citing *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. [Panel Op.] 1983)). Accordingly, this factor weighs heavily in Roldan's favor.

---

[3]In general, courts find that a delay approaching one year is sufficient to trigger a full inquiry. *Doggett*, 505 U.S. at 652 n.1.

[4]The right to a speedy trial attaches when an individual is accused of a crime. This can occur when she is arrested or when she is charged. *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013) (citing *United States v. Marion*, 404 U.S. 307, 321 (1971)).

[5]The incident was alleged to have occurred on April 26, 2009.

[6]The State acknowledges that the nine-year delay is sufficient to trigger a full *Barker* analysis.

## 2. Reason for the Delay

While the "burden of excusing the delay rests with the State," *Phillips*, 650 S.W.2d at 400, "different weights should be assigned to different reasons," *Barker*, 407 U.S. at 531, when analyzing this prong of the *Barker* test. Thus, "the length of delay can be further subdivided into justifiable and unjustifiable reasons for delay depending on the circumstances of the case." *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App. 2014) (citing *Barker*, 407 U.S. at 531–32). "A justifiable reason for delay in a complex white-collar case, for example, may not be a justifiable reason for delay in a simple assault case." *Id.* (citing *Dickey v. Florida*, 398 U.S. 30, 38 (1970) ("Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable."). However, deliberate attempts to delay trial in order to hamper a defense are weighted heavily against the State. *Barker*, 407 U.S. at 531. More neutral reasons, such as negligence or overcrowded dockets, are weighted less heavily. *Id.* A valid reason for delay "should serve to justify appropriate delay." *Id.* Delay which is attributable in whole or in part to the defendant is heavily weighed against the defendant and "may even constitute a waiver of a speedy trial claim."[7] *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (citing *Barker*, 407 U.S. at 528–30; *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennen, J., concurring, joined by Marshall, J.)).

To simplify, we will separate the nine-year period of time into three phases, with the first phase beginning at the time of Roldan's arrest in April 2009 and ending on April 15, 2011, when both parties announced they were ready to proceed with trial. During this initial phase, the delay

---

[7]The complexity of the charged offense should also be considered: "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

6

appears to be a result, at least in part, of Roldan's own actions. First, she announced she was not ready for trial, necessitating a continuance in the matter. Then, although a guilty plea setting had been scheduled by the trial court, for some reason, the plea hearing never took place, thus requiring another continuance. Undoubtedly, Roldan had the right to change her intended plea of guilty and request a jury trial; however, the resulting delay cannot be attributed to the State.

Next, we address the second phase, that is, the seven-year period between April 15, 2011, at which time both sides announced ready for trial, and February 27, 2018, when the trial court issued a capias for her failure to appear in court. First, there is nothing in the record demonstrating that the State deliberately delayed the trial in an effort to hamper Roldan's defense. Regardless, the State carries the burden of justifying its delay. *See Cantu*, 253 S.W.3d at 280. Yet, when there is an absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense, nor a valid reason for the delay. *Id.* Such prejudice is given less weight than a deliberate intent to harm the accused's defense. *Doggett*, 505 U.S. at 657.

Notably, during the seven-year period of time, Roldan failed to bring the issue of delay to the trial court's attention by filing a motion for speedy trial. "The defendant has no duty to bring himself to trial; that is the State's duty. But a defendant does have the responsibility to assert his right to a speedy trial." *See Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28). Roldan did not assert her right to a speedy trial during extended periods of inactivity in the case.[8] On the

---

[8]Fairly recently, the Texas Court of Criminal Appeals held, "Because we have determined that the record supports a conclusion that appellant knew about his Texas charge, his complete failure to assert his right to a speedy trial for more than eighteen years suggests that he did not really want a speedy trial." *Hopper v. State*, 520 S.W.3d 915, 928 (Tex. Crim. App. 2017); *see Lott v. State*, 951 S.W.2d 489, 495 (Tex. App.—El Paso 1997, pet. ref'd) (factor weighed

7

other hand, the State offered no justifiable reason for its failure to proceed with Roldan's trial in a more timely manner. As a result, this period of delay must be attributed to both parties; however, the greatest measure of fault rests squarely with the State.

At the beginning of February 2018, the trial court noticed Roldan to appear in court on February 27, but Roldan failed to appear. As a result, on the same day, the court issued a capias for her arrest, and about a month after that, Roldan was arrested. Although Roldan maintained she never received the February 2018 notice to appear, the trial court, as the finder of fact, could have found her credibility, as it related to that specific testimony, to be suspect.[9] *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). It was within the trial court's discretion to have believed or disbelieved all, part, or none of Roldan's testimony[10] and to have assigned that period of delay to her, rather than the State.[11]

When we examine the record in its entirety, the nine-year delay was attributable, at least in part, to Roldan; however, the State failed to offer any justification for the excessive delay. Accordingly, this factor weighs in favor of a finding that Roldan's right to a speedy trial was violated.

---

against appellant when the evidence "support[ed] a finding that Lott, knowing of the charges, chose to remain at large for more than thirty years without ever demanding a trial").

[9]During the hearing on her motion to dismiss, Roldan stated that she did not receive notice to appear in court. She maintained that although she kept in contact with her attorney, he did not tell her about the issuance of the capias and did not inform her that she had been ordered to appear in court. Roldan also stated that her bondsman did not let her know that she had a court date.

[10]*See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

[11]On May 23, 2018, Roldan asked the trial court to grant her motion to substitute counsel, which it did. At the time the trial court granted her motion, Roldan's trial was scheduled to begin just three weeks later on June 11, 2018. It was subsequently reset to a later date. This is additional evidence that the latter portion of the proceeding was delayed by Roldan, not the State.

### 3. Assertion of Right

Next, Roldan had the responsibility to timely assert her right to a speedy trial. *See Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28). "Whether and how a defendant asserts [her] right is closely related to the other [Barker] factors. . . ." *Gonzales*, 435 S.W.3d at 810 (quoting *Barker*, 407 U.S. at 531 ("noting that a defendant's timely assertion of his speedy-trial right affects the other *Barker* factors")). Thus, "this factor 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right [to a speedy trial]." *Id.* at 810–11 (quoting *Barker*, 407 U.S. at 531–32). However, "although an accused is entitled to a speedy trial, a defendant has no duty to bring himself to trial." *Id.* at 811 (citing *Zamorano v. State*, 84 S.W.3d 643, 651 (Tex. Crim. App. 2002)).

"Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Cantu*, 253 S.W.3d at 283 (citing *Barker*, 407 U.S. at 534–36). Under Texas law, a request that the court dismiss the charges for a speedy-trial violation, rather than a request for a prompt trial setting, attenuates the strength of a speedy-trial claim because it indicates more of a desire to avoid trial rather than a desire to obtain a speedy trial. *Phillips*, 650 S.W.2d at 401; *Barringer v. State*, 399 S.W.3d 593, 601 (Tex. App.—Eastland 2013, no pet.); *Orosco v. State*, 827 S.W.2d 575, 577 (Tex. App.—Fort Worth 1992, pet. ref'd). "The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281.

In support of her position that this factor weighs in her favor, Roldan directs us to *Doggett*, 505 U.S. at 657. In *Doggett*, the United States Supreme Court was tasked with determining whether an eight-and-one-half year delay between the indictment and prosecution violated

Doggett's Sixth Amendment right to a speedy trial. Doggett had been indicted in February 1980 for conspiracy to import and distribute cocaine. *Id.* at 648. When the Government arrived at his parent's home to arrest him, they found out that just four days earlier, he had left for Columbia. *Id.* at 649. In September 1981, the Government determined that Doggett had been arrested in Panama on drug charges. A year later, Doggett passed through customs in New York City without being stopped. Unbeknownst to the Government, Doggett lived openly under his own name, subsequently married, earned a college degree, found steady employment, and stayed within the law. *Id.* About six years later, the Government became aware that Doggett was in the United States when the Marshal's Service ran a credit check on several thousand people who had outstanding warrants. *Id.* at 650. Within minutes, the Government determined where Doggett lived and worked. *Id.* On September 8, 1988, Doggett was arrested and prosecuted. *Id.*

Doggett moved to dismiss his indictment, arguing that the Government's failure to prosecute him violated his Sixth Amendment right to a speedy trial. *Id.* However, the district court denied his motion,[12] and Doggett entered a conditional guilty plea. *Id.* The court of appeals affirmed the district court's ruling. The United States Supreme Court granted certiorari, holding that the eight-and-one-half-year delay violated Doggett's Sixth Amendment right to a speedy trial.

The court pointed out, "The Government goes against the record again in suggesting that Doggett knew of his indictment years before he was arrested. Were this true, *Barker*'s third factor,

---

[12]The district court took the magistrate judge's recommendation, which found that the delay was "presumptively prejudicial," "that the delay [was] 'clearly . . . attributable to the negligence of the government' and that Doggett could not be faulted for any delay in asserting his right to a speedy trial, there being no evidence that he had known of the charges against him until his arrest." *Doggett*, 505 U.S. at 650 (citation omitted). "The Magistrate also found, however, that Doggett had made no affirmative showing that the delay had impaired his ability to mount a successful defense or had otherwise prejudiced him." *Id.* This failure, according to the magistrate judge, sufficed to defeat Doggett's motion to dismiss. *Id.*

concerning invocation of the right to a speedy trial, *would be weighed heavily against him.*" *Id.* at 653 (emphasis added).

In this case, there is little, if any, doubt that the State took an excessive amount of time to bring Roldan to trial. Unlike the facts contained in *Doggett*, here, Roldan had been aware of the existence of the indictment from the time it was handed down by the grand jury. Despite having this knowledge, Roldan failed to move for a speedy trial. Although she was indicted in May 2009, she did not bring her complaint to the trial court until almost nine years later and just two weeks prior to the commencement of trial, when she filed her motion to dismiss.[13] The delay in the presentment is relevant in determining this *Barker* factor. *See Barker*, 407 U.S. at 529 (we consider the force of the defendant's objections to delay); *see also Speights v. State*, No. 06-12-00137-CR, 2014 WL 1246074, at \*5 (Tex. App.—Texarkana Mar. 26, 2014) (mem. op., not designated for publication), *rev'd on other grounds by* 464 S.W.3d 719 (Tex. Crim. App. 2015).[14]

In *Shaw v. State*, 117 S.W.3d 883 (Tex. Crim. App. 2003), there was a delay of thirty-five months between the issuance of the indictment and appellant's second trial. *Id*. at 888. Despite its finding that Shaw's right to a speedy trial had been violated, the Texas Court of Criminal Appeals explained,

> Although a defendant's failure to seek a speedy trial does not amount to a waiver of the speedy trial right, failure to seek a speedy trial makes it difficult for a defendant to prevail on a speedy trial claim. *Barker v. Wingo*, 407 U.S. at 432, 92 S.Ct. 2182. This is so because a defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one. *Dragoo v. State*, 96 S.W.3d at 314. Furthermore, the longer the delay becomes, the more likely it is that a defendant who really

---

[13]Doggett filed his motion to dismiss as soon as he became aware of the indictment against him.

[14]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

11

> wanted a speedy trial would take some action to obtain one. *Ibid.* *Thus, a defendant's inaction weighs more heavily against a violation the longer the delay becomes. Ibid.*

*Id.* at 890 (emphasis added). In determining that this particular factor weighed against Shaw, and in favor of the State, the court reasoned, "[Shaw] failed to assert his speedy trial until 29 months after his first trial, and he did not seek a hearing on his motion to dismiss until almost six months after that, although he was represented by counsel . . . ." *Id.*

In this case, Roldan waited nine years before she brought the issue to the court's attention, and the hearing was held during the latter portion of the trial proceedings. During the entirety of the proceedings, Roldan was represented by counsel, and she has not alleged that her counsel was ineffective. Her procrastination, coupled with her request for dismissal when she ultimately did complain of the delay, leads us to conclude that this *Barker* factor weighs heavily against her.

### 4. Prejudice

"[T]he burden is on the accused to make some showing of prejudice which was caused by the delay in [her] trial." *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973). Prejudice occasioned by the delay in proceeding to trial is assessed in the light of the three interests which the right to a speedy trial was designed to protect: (1) freedom from oppressive pretrial incarceration, (2) mitigation of the anxiety and concern on the part of the accused that accompanies a public accusation, and (3) avoidance of impairment to the defense of the charges. *Barker*, 407 U.S. at 532.

As to the first factor, Roldan was confined in jail for only five days, and there was evidence that her confinement was a direct result of her failure to appear in court. Thus, we are unable to find that she was prejudiced or harmed by her brief pretrial confinement.

12

Regarding the second factor, during the hearing on her motion to dismiss, Roldan testified that due to the aggravated assault charge pending against her, she had lost employment opportunities and had been fired from jobs. According to Roldan, she lost her home because she did not have a job, and it had been difficult to explain the circumstances to her children.[15] Roldan stated that she suffered from depression and anxiety, but that she had not been to the doctor because she did not have health insurance and she lacked the finances to do so.

In *Harlan v. State*, 975 S.W.2d 387 (Tex. App.—Tyler 1998, pet. ref'd), Booker T. Harlan pled guilty to the offense of driving while intoxicated when the trial court denied his motion to set aside the information based on an alleged violation of his right to a speedy trial. *Id.* at 389. Nearly four and one-half years had elapsed between the time of his arrest and the date his trial began. *Id*. In his sole point of error on appeal, Harlan maintained that the trial court erred when it denied his motion, which he had made orally shortly before jury selection. *Id*. In affirming the trial court, the Tyler Court of Appeals explained,

> Appellant did not suffer oppressive pretrial incarceration because he was released on bond after one night in jail. He claimed during the hearing on his motion to dismiss that he suffered much anxiety and concern during the four years prior to his ultimate prosecution. The Supreme Court has recognized that even if not detained prior to trial, one awaiting trial on criminal charges suffers restraints on his liberty and lives "under a cloud of anxiety, suspicion, and often hostility." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. Appellant did not offer evidence, apart from his testimony, to demonstrate such anxiety, and, as noted above, we are inclined to conclude that his level of anxiety was not great, given the fact that he never pursued his pretrial motions nor asserted his right to a speedy trial during the more than four years leading up to trial. *Cf. Santallan v. State*, 922 S.W.2d 306, 309 (Tex. App.— Fort Worth 1996, pet. ref'd). In fact, the unavoidable inference is that Appellant's main source of anxiety was his fear of almost certain conviction; but we may also

---

[15]Roldan testified that she had been working at a nursing home at the time of her arrest for failure to appear in court.

infer that the delay provided Appellant with his only relief from that anxiety because it gave him hope that the case would be dismissed on speedy trial grounds.

*Id*. at 390–91.

As was the case in *Harlan*, here, Roldan offered only her testimony in regard to this issue. Likewise, she did not file a motion to dismiss until she neared the commencement of her trial. Further, and as we have already discussed, there was evidence that she failed to comply with the trial court's notice requiring her presence in court. Instead, she was arrested about a month later. When taking into consideration Roldan's actions, it could be said that the delay "provided [her] with [her] only relief from that anxiety" rather than adding to it. *See id.* Regardless, Roldan's testimony did not demonstrate that she suffered "greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *See Porter v. State*, 540 S.W.3d 178, 184 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Cantu*, 253 S.W.3d at 286).

As to the third factor, Roldan contends that the delay in the start of her trial resulted in her inability to mount a defense. The Texas Court of Criminal Appeals has held that "[o]f these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare [her] case skews the fairness of the entire system.'" *Dragoo*, 96 S.W.3d at 315 (quoting *Barker*, 407 U.S. at 532). However, in order for Roldan to make a showing of prejudice, she must demonstrate "that the witnesses are unavailable, that their testimony might be material and relevant to [her] case, and that [she] has exercised due diligence in [her] attempt to find them and produce them for trial." *See Harris*, 489 S.W.2d at 308; *see also Dokter v. State*, 281 S.W.3d 152, 162 (Tex. App.—Texarkana 2009, no pet.).

14

During the hearing on her motion to dismiss, Roldan was asked, "You are aware that this house was at Chris and Cristal's -- I'm sorry. The party was at Chris and Cristal's house?" She answered, "Yes." Roldan was then asked, "We attempted to locate them; is that right? We were provided with an address for them [by the State]," to which she responded, "Yes." The questioning continued, "You are aware we sent -- we ordered subpoenas, sent them to the sheriff's office. They were returned, saying there was no forwarding address for them?" Roldan said, "Yes." Nevertheless, in its rebuttal case, the State called both witnesses to testify. Neither witnesses' testimony was favorable to Roldan. Consequently, we cannot find that the delay prejudiced her ability to defend herself.[16]

We conclude the prejudice factor does not weigh in favor of dismissal of the case.

### 5. Balancing

"Having addressed the four *Barker* factors, we must now balance them." *Dragoo*, 96 S.W.3d at 316. Here, the nine-year delay in the commencement of trial, of which a large portion was attributable to the State, weighs in favor of finding that Roldan's speedy-trial right was violated. However, Roldan's contribution to the delay, as well as her tardy presentment of her complaint to the trial court, and then pleading for a dismissal—as opposed to requesting speedy

---

[16]In support of her contention that this particular factor weighs in her favor, Roldan again relies on *Doggett*. There, the Court stated that even if Doggett failed to make an affirmative showing that the delay weakened his ability to present a defense, "consideration of prejudice is not limited to the specifically demonstrable . . . ." *Doggett*, 505 U.S. at 655. The Court continued, "Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id*.

Again, there is a difference between the facts in *Doggett* and the facts of this case. As we have already noted, in *Doggett*, the Court took into consideration that Doggett was unaware of the indictment pending against him. As far as he knew, there was no reason for him to seek potential defense witnesses. Thus, his lack of knowledge contributed to his inability to effectively prepare for his defense. Unlike Doggett, Roldan knew of the pending indictment against her from its inception. In this case, Roldan not only waited until just before the commencement of trial to locate witnesses, the State actually located the witnesses, called them to testify at trial, and the witness testimony was not favorable to Roldan. Consequently, the present case is distinguishable from *Doggett*.

trial—all weigh heavily against her claim. Moreover, other than showing that there had been a negative effect on her personal life due to the pending charge, there was little, if any, evidence to indicate that the delay negatively affected her ability to mount a defense at trial. This is especially true considering that Roldan had been released on bond during the complained-of period of time. We therefore conclude that the trial court did not err in declining to dismiss the indictment.

Accordingly, we overrule Roldan's sole point of error.

## II. Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     July 29, 2019
Date Decided:      August 29, 2019

Do Not Publish