

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-23-00011-CR

———————————————————

JAVIER CARRILLO PAYAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1736815R

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

**MEMORANDUM OPINION**

Javier Carrillo Payan appeals his conviction for continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02(b). In three issues, Payan argues that he was denied his right to a speedy trial and that the trial court abused its discretion by refusing his attempt to question J.M.,[1] the complainant, about previous abuse allegations and by admitting evidence of his previous violent acts. We will overrule each of Payan's issues and affirm the trial court's judgment.

## I. Background

Because Payan does not challenge evidentiary sufficiency, we will summarize the facts only briefly. J.M. testified that she and her mother, C.M., moved into Payan's house after C.M. began dating him. When J.M. was four years old, Payan asked her to touch his penis, and he attempted to touch her vagina. At age five, J.M. was removed from the home based on allegations of domestic abuse and was placed in foster care. She was moved from foster care to placement with a relative where she remained for eighteen months before being returned to C.M. on the condition that J.M. have no contact with Payan.

J.M. testified that after she was returned to C.M., her mother maintained a separate apartment, but they frequently stayed at Payan's house. J.M. recalled that she

---

[1]To protect the complainant's anonymity, we use initials to refer to her and her mother. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

was in second grade the first time Payan penetrated her vagina with his penis, and she said that it continued to occur at least once a week. J.M. also described how Payan forced her to touch his penis with her hands and her mouth on multiple occasions. Payan would also touch J.M.'s vagina, breasts, and anus with his mouth. J.M. testified that when she was fourteen years old, she stayed the night alone with Payan at his house, where they had sexual intercourse and she performed oral sex on him.[2] The following morning she told a friend from school about the abuse. Her friend's mother took J.M. to the hospital, and she was placed in the care of Child Protective Services (CPS).

Payan testified at trial and denied sexually abusing J.M. He specifically denied forcing her to perform oral sex on him and engaging in sexual intercourse with her.

## II. Right to a Speedy Trial

In his first issue, Payan argues that he was denied his right to a speedy trial under the United States and Texas Constitutions. *See* U.S. Const. amend VI; Tex. Const. art. I §10. Payan contends that his conviction should be set aside and the indictment dismissed with prejudice.

### A. Speedy-Trial Facts

- May 4, 2019, J.M. was taken to the hospital after she made an outcry.

---

[2]We note that Count 1 of the indictment did not rely on alleged conduct that occurred after J.M. turned fourteen. *See* Tex. Penal Code Ann. § 21.02(b)(2).

- May 29, 2019, Payan was arrested.

- August 2, 2019, Payan was indicted.

- May 19, 2022, Payan's counsel applied for a habeas writ seeking release because of delay under Article 17.151 of the Texas Code of Criminal Procedure, s*ee* Tex. Code Crim. Proc. Ann. art. 17.151, and separately moved for a speedy trial.

- June 3, 2022, Payan filed an amended Article 17.151 writ and moved for a reduced bond.

- June 10, 2022, the trial court held a hearing on Payan's habeas application and bond-reduction motion and granted Payan's motion for bond reduction.

- June 22, 2022, Payan filed a pro se speedy-trial motion.

- June 28, 2022, Payan was reindicted.

- July 27, 2022, Payan filed an amended pro se speedy-trial motion.

- October 21, 2022, Payan's counsel filed a speedy-trial motion.

- October 28, 2022, the trial court again reduced Payan's bond.

- October 28, 2022, the trial court denied Payan's motion for speedy trial.

- January 9, 2023, Payan's trial began.

## B. *Barker* Factors

To determine when a Sixth Amendment speedy-trial violation occurs, appellate courts apply a balancing test using the factors set out in *Barker v. Wingo*. *See* 407 U.S.

4

514, 530, 92 S. Ct. 2182, 2192 (1972); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (reciting the *Barker* factors). The Texas constitutional speedy-trial right exists independently of the federal guarantee, but Texas courts traditionally analyze claims of a speedy-trial violation under the factors established in *Barker*. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Appellate courts weigh: (1) the length of delay, (2) reasons for the delay, (3) the defendant's assertion of his speedy-trial right, and (4) prejudice to the defendant because of the delay. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. The conduct of the State and conduct of the defendant are weighed under each factor, though no single factor alone is necessary or sufficient to establish a speedy-trial violation. *Hurdsman v. State*, No. 02-17-00319-CR, 2018 WL 5832116, at *3 (Tex. App.—Fort Worth Nov. 8, 2018, pet. ref'd) (mem. op., not designated for publication).

The first factor—length of delay—is, to an extent, a triggering mechanism for the remaining factors. *Santallan v. State*, 922 S.W.2d 306, 307 (Tex. App.—Fort Worth 1996, pet. ref'd). The State agrees that the over-three-year delay between Payan's arrest and start of trial is sufficient to trigger the *Barker* enquiry.

When assessing the second factor—reasons for delay—different weights are given to different reasons. *Gonzales*, 435 S.W.3d at 809. For instance, deliberate delays to hamper the defense will weigh more heavily against the State than more neutral reasons such as negligence or overcrowded dockets, which will still weigh against the State but less heavily. *Id.* Payan does not argue that the delay was the result of

deliberate conduct, and his only argument on the reason for delay is that the May 2022 trial setting was delayed because the State's witness was unavailable. A valid reason for the delay, such as a missing witness, does not weigh against the State. *See Lujan v. State*, No. 11-18-00247-CR, 2020 WL 5241087 at *5 (Tex. App.—Eastland Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication). The record shows that before the May 22, 2022 trial setting, trial had been set for January 7, 2022, but Payan's counsel filed a motion for continuance stating that Payan was in quarantine and could not meet with counsel to prepare for trial. The trial court's order denying the speedy-trial motion states that Payan could not be ready for trial on October 31, 2022. Because two of the trial settings were delayed at Payan's counsel's request and there is no evidence of deliberate delay by the State, this factor does not weigh against the State. *See Staten v. State*, 919 S.W.2d 493, 501 (Tex. App.—Fort Worth 1996, pet. ref'd).

The third factor—assertion of the speedy-trial right—concerns whether and how a defendant asserts the right. *Gonzales*, 435 S.W.3d at 810. Delay in asserting a speedy-trial right weighs against a defendant. *See Dragoo v. State*, 96 S.W.3d 308, 314–15 (Tex. Crim. App. 2003); *see also Murphy v. State*, 280 S.W.3d 445, 454 (Tex. App.—Fort Worth 2009, pet. ref'd). Here, Payan waited almost three years to assert his speedy-trial right. After the trial court reduced Payan's bond, his counsel filed a second speedy-trial motion seeking "that trial in this case be scheduled in accordance with reasonable speed and the Court's existing trial calendar." The trial court's order

6

denying the motion states that Payan's counsel could not be ready for the next available trial date. This factor weighs against Payan. *See Dragoo* 96 S.W.3d at 314–15.

The final *Barker* factor—prejudice—is assessed in light of what the speedy-trial right is designed to prevent: oppressive pretrial incarceration, a defendant's anxiety and concern, or impairment of a defense. *Dragoo*, 96 S.W.3d at 315. Impairment of a defense is the most serious, as an inability to adequately prepare for trial skews the fairness of the justice system. *Id.* (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). Actual prejudice is not required, but the defendant must show some prejudice caused by the delay. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999).

Payan claims prejudice in that the effectiveness of his cross-examination of J.M. was compromised because she responded to contradictory testimony by claiming she did not remember. Payan's counsel extensively cross-examined J.M. and pointed out inconsistencies in her testimony. Because some of the alleged acts occurred many years before J.M.'s outcry, it is possible she would have had difficulty recalling certain details regardless of the trial delay. Payan did not satisfy his burden of showing prejudice in this case. *See Lujan*, 2020 WL 5241087 at * 5.

Balancing the *Barker* factors, we conclude that Payan's speedy-trial right was not violated. We overrule Payan's first issue.

### III. Exclusion and Admission of Evidence

In his second issue, Payan argues that the trial court abused its discretion by refusing to allow questioning designed to expose J.M.'s bias and motive to testify

7

falsely. In the third issue, he complains that the trial court abused its discretion by allowing evidence that he committed violence against C.M.

## A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (op. on reh'g). We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion. *Zuliani*, 97 S.W.3d at 595. An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id.*

## B. J.M.'s Bias and Motive to Testify Falsely

The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that her testimony is exaggerated or unbelievable. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). But the trial judge retains wide latitude to impose reasonable limits on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (citing *Delaware v. VanArsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431 (1986)). The constitutional right to cross-examine concerning the witness's potential bias or prejudice does not allow unfettered cross-examination. *See id.*

On J.M.'s cross-examination, Payan's counsel questioned her about the time she was in foster care and then asked, "Now, you have stated in the past that you were physically and sexually abused by those people - - by the - - by the man in that house, correct?" J.M. responded that she did not recall. The State objected to testimony of prior outcries of sexual abuse. Payan's counsel stated:

> It came out in her forensic interview in this case, she discussed it specifically with Samanth Torrence. And I believe it goes to part of our defense as to why she may have fabricated a story against [Payan] because she was placed into foster care because of him.

The trial court sustained the State's objection.

The trial court allowed Payan to question J.M. outside the presence of the jury. J.M. stated that she did not recall stating during the forensic interview that she had been sexually and physically abused in foster care and also that she did not remember any abuse occurring in foster care. She further stated that there is "a chance" she could have said that during the forensic interview, but she does not remember saying that. Payan's counsel argued:

> I just think we should be able to go into that, what was her statement, and potentially, it gives [J.M.] a motive or bias against [Payan] if she believes that part of the reason she was subject to that is because of things he had done to her to get her into foster care.

The trial court sustained the State's objection to the testimony.

Payan specifically argues that he was offering the evidence to show that the abuse J.M. suffered in foster care caused her to blame him, provided a bias against him, and provided a motive for her to fabricate her testimony. But the record does

9

not support Payan's argument—nothing in the record suggests that J.M. was abused in foster care. J.M. stated that she did not recall being sexually or physically abused in foster care, and there is no record evidence of a prior outcry. We conclude that the trial court did not abuse its discretion in refusing cross-examination concerning J.M.'s alleged abuse while in foster care. *See Banta v. State*, No. 09-22-00286-CR, 2023 WL 7174002 at *5 (Tex. App.—Beaumont Nov. 1, 2023, no pet. h.) (mem. op., not designated for publication).

Moreover, erroneous admission or exclusion of evidence is nonconstitutional error governed by Texas Rule Appellate Procedure 44.2(b). *James v. State*, 335 S.W.3d 719, 726 (Tex. App.—Fort Worth 2011, no pet.). That Rule requires us to disregard any nonconstitutional error that does not affect appellant's substantial rights. *Id.* A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021).

Counsel specifically asked J.M. on cross-examination if she held Payan responsible for her being in foster care. J.M. responded that she was not sure why she

went into foster care. Counsel again asked J.M. if Payan was a factor in her going to foster care, to which J.M. responded:

> I didn't really blame him for me going into foster care whenever I was four because I didn't completely understand why I was in foster care. All I knew is that I have got taken from my mom and placed with a different family. That's all I understood at that age.

Thus, because Payan was able to present his theory to the jury—that J.M. was biased and motivated to testify falsely because she blamed Payan for her going to foster care—any error in refusing to allow cross-examination of J.M.'s alleged abuse in foster care was harmless. *See* Tex. R. App. P. 44.2(b). We overrule Payan's second issue.

## C. Violence Against C.M.

In his third issue, Payan complains that the trial court abused its discretion by allowing evidence that he committed violent acts against C.M. Before J.M. testified, the State indicated its intention to offer testimony that she witnessed Payan commit domestic violence against her mother, C.M. The State opined that the testimony was relevant to explain J.M.'s delayed outcry and also to explain CPS's involvement in the home. Payan objected under Texas Rule of Evidence 403, and the trial court granted a motion in limine regarding physical violence between Payan and C.M.

Payan's counsel asked J.M. on cross-examination about times when C.M. and Payan had heated arguments that resulted in his physically kicking C.M. out of the house. The State then informed the trial court that this line of questioning would open the door to evidence of physical abuse against C.M. The trial court noted, "We

are way past that. . . . We are well into physical abuse now. That door has been opened wide some 26 questions ago." Payan's counsel continued to question J.M. about C.M.'s leaving the house after arguments with Payan.

Before redirect examination, the State apprised the trial court of its intent to question J.M. about physical violence between Payan and C.M. Payan's counsel objected, stating that he did not open the door and that he did not ask J.M. anything about particular violence. Counsel objected under Rule 403—that the evidence was more prejudicial than probative, that it would confuse the issues and mislead the jury, and that it would unfairly prejudice Payan. The trial court stated:

> You asked - - you asked her at least - - I stopped counting at 26 questions regarding her being taken from the home and put into foster care, you asked her the main question, you hold [Payan] responsible for being put into foster care, you hold him - - you asked her that twice, if she had ill feelings against him, you also asked her about the - - the number of times that she could have outcried and she didn't. The State has already indicated they're going to - - they want to get into this to explain that portion of testimony.
>
> I - - I mean, I think the door has been opened wide for them to get into that, so I'm going to overrule your relevance objection. It's not confusing the issues. You did open the door. And based upon the State's proffer, I'll conduct a balancing test, and I will find that the probative value is not substantially outweighed by the prejudicial effect.

J.M. testified on redirect examination that during their arguments, Payan would punch and kick C.M. and throw her into walls. J.M. recalled that on one occasion, C.M. was lying unconscious in a pool of her own blood and urine.

Although relevant, evidence can be properly excluded under Rule 403 if the danger of unfair prejudice substantially outweighs the evidence's probative value. *See Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd); *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.); *see also* Tex. R. Evid. 403. Recognizing that trial courts are best positioned to gauge the evidence's impact, we measure the trial court's ruling against the Rule 403 balancing criteria: (1) the inherent probative force of the evidence along with (2) the State's need for the evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the evidence's probative force, and (6) the likelihood that presenting the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

The first two factors weigh in favor of admission. Based on allegations of domestic abuse, J.M. was removed from the home when she was five years old and placed in foster care. Payan's defensive theory was that J.M. blamed him for her being in foster care, and counsel asked J.M. more than once if she so blamed Payan. In addition, counsel specifically asked J.M. about the altercations between Payan and C.M. The evidence was probative and necessary for the State to explain J.M.'s delayed outcry and to provide context for J.M.'s being in foster care in response to Payan's

13

defensive theory. *See Gamble v. State*, No. 2-07-174-CR, 2009 WL 806879 at *5 (Tex. App.—Fort Worth Mar. 27, 2009, pet. ref'd) (per curium) (mem. op., not designated for publication).

The third, fourth, and fifth factors also do not show that the probative value of the evidence of violence against C.M. was substantially outweighed by its prejudicial effect or by some tendency to mislead the jury. Payan suggests that the evidence served only to inflame the jury against him. In contrast to the brief testimony concerning violence against C.M., the jury heard extensive detailed testimony of Payan's sexual abuse of J.M. The jury further heard testimony that Payan physically abused J.M. by slapping her and kicking her. Nothing indicates that the brief testimony of Payan's physical abuse of C.M. confused or distracted the jury from the main issue in the case, that this testimony suggested a decision on an improper basis, or that the testimony was given undue weight because the jury was ill equipped to evaluate its probative value. *See Wells*, 558 S.W.3d at 669. Payan concedes that the testimony was brief and did not consume an inordinate amount of time; thus, the sixth factor also favors admission. *See id.*

After considering all the *Gigliobianco* factors, we hold that the trial court did not abuse its discretion in allowing testimony of domestic violence between Payan and C.M. We overrule Payan's third issue.

## IV. Conclusion

Having overruled Payan's three issues, we affirm the trial court's judgment.

14

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  January 18, 2024