**REVERSE and REMAND and Opinion Filed April 17, 2020**



In The
Court of Appeals
Fifth District of Texas at Dallas

_____

No. 05-18-01391-CR
_____

THE STATE OF TEXAS, Page
V.
THOMAS HUGHES PAGE, Appellee

**On Appeal from the County Criminal Court No. 1
Dallas County, Texas
Trial Court Cause No. MA1851150A**

## MEMORANDUM OPINION
Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

The State of Texas appeals the trial court's order granting Thomas Hughes

Page's motion to dismiss the information against him for violation of his right to a

speedy trial. In two issues, the State contends the trial court erred because (1) an

eight-month delay between arrest and the speedy trial motion is not a presumptively

prejudicial delay and (2) the trial court misapplied the test for determining a speedy

trial violation. We reverse the trial court's order and remand for further proceedings.

## <u>Violation of Right to Speedy Trial</u>

The Sixth Amendment to the U.S. Constitution guarantees the accused in a criminal prosecution the right to a speedy trial. *See* U.S. CONST. amends. VI[1] and XIV; *see also Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967) (identifying the right to a speedy trial as fundamental and holding that it is applicable to the states through the Due Process Clause of the Fourteenth Amendment); *McKinney v. State*, 491 S.W.2d 404, 407 (Tex. Crim. App. 1973) (recognizing that the Sixth Amendment's guarantee of an accused's right to a speedy trial is imposed on the states by the due process clause of the Fourteenth Amendment). This right protects a defendant against unjustified and prejudicial pretrial delay. *Doggett v. United States*, 505 U.S. 647, 651-52, 658 (1992); *see also Duran v. State*, No. 05-15-00171-CR, 2016 WL 3144066, at *2 (Tex. App.—Dallas May 31, 2016, pet. ref'd) (mem. op., not designated for publication).

The United States Supreme Court established a balancing test to be used, on an "ad hoc" basis, in analyzing a speedy trial complaint. *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972). In applying this test, we must consider four factors: the length of delay, the reasons for delay, to what extent the defendant asserted his right to a

---

[1] The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The Texas Constitution also guarantees the accused in all criminal prosecutions the right to a speedy and public trial. TEX. CONST. art. I, § 10. While this right exists independently of the federal guarantee, Texas courts analyze claims of a denial of the state speedy trial right under the same factors as do federal courts. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). In his motions, Page did not cite to either constitution but relied on both federal and Texas case law.

speedy trial, and any prejudice suffered by the defendant. *Id.*; *Hopper v. State*, 520 S.W.3d 915, 923-24 (Tex. Crim. App. 2017). The State must justify the length of the delay, but the defendant must prove he asserted his right to a speedy trial and was prejudiced by the delay. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008).

Before a court engages in an analysis of each *Barker* factor, the accused must first make a showing that the interval between accusation, *i.e.*, either his arrest or the date on which he was charged, and trial has crossed the threshold dividing ordinary delay from presumptively prejudicial delay. *Doggett*, 505 U.S. 647, 652 n. 1; *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). "Presumptive prejudice" marks the point at which courts deem the delay unreasonable enough to trigger further inquiry. *Doggett,* 505 U.S. at 652 n. 1; *Gonzales,* 435 S.W.3d at 808.

## Background

On January 5, 2018, Page was arrested for a second offense of driving while intoxicated, hereinafter DWI, a Class A misdemeanor.[2] Page was released on bond that same day. On February 28, 2018, Page was formally charged by information and complaint. On March 6, 2018, counsel for Page entered a written order of

---

[2] *See* TEX. PENAL CODE ANN. §§ 49.04(a); 49.09(a).

appearance and requested discovery pursuant to TEX. CODE CRIM. PROC. ANN. art. 39.14.[3]

Notice of a first trial setting, for September 11, 2018, was given on July 30, 2018. The notice provides that "[d]efendant's attorney may make this appearance."

On August 13, 2018, counsel for Page filed a motion for speedy trial. In that motion, Page prayed that "he be granted a speedy trial on said charge or that said information be dismissed and that the Defendant be released from restraint." The motion further alleged that Page was "being prejudiced by the State's delay in bringing this case to trial."

On September 6, 2018, counsel for Page filed a motion to dismiss for violation of Page's right to a speedy trial. On September 10, 2018, Page's attorney requested, and the State agreed, to reset the case to October 19, 2018, for purposes of a pre-trial hearing on Page's motion to dismiss.

A hearing was held on Page's motion on October 19, 2018. At that hearing, Page testified that he and his brother were engaged in a private equity investments business with a focus on beverages. His role in the business was to try to raise money for the business and also to sell the business. As a condition of his bond, he had to put an interlock device on his car. He testified that the interlock device interfered

---

[3] Counsel for Page asked for the State to "promptly disclose the existence of the document, item or information to the defendant, his attorney of record, and the court." Counsel further asked that the State "electronically record or otherwise document any document, item, or other information provided pursuant hereto, setting forth each document, item, or other information and the date and time same was provided to Defendant's attorney of record."

with his business; he had to blow into the machine over 600 times a month, the machine would beep when he was on the telephone with clients, and he could not valet park his vehicle when he met with clients at a hotel or restaurant. He often had to use Uber or have someone drive him which he did not feel showed "good form" in front of business associates. He testified that the interlock device affected his ability to perform his occupation as it interfered with his ability to raise capital and sell the business; this was very stressful. He also testified that "it affects my income if I'm not able to perform my job function."

Additionally, Page was divorced but shared custody of his five-year-old son with his ex-wife. The interlock device caused him anxiety because, as he explained, he was "not able to drive my child and his friends and classmates to any of their activities for fear that one of them will tell their parents and I'll be judged as not being able to perform my parental duties properly."

Defense counsel argued that his motion should be granted on grounds that (1) the delay from the date of Page's arrest to the first trial setting was sufficient to trigger a presumptive delay, (2) the State "in the face of a demand for a speedy trial" did nothing, (3) Page was not responsible for the delay, and (4) Page suffered both harm and prejudice because "he's subjected to anxiety from the strain of his liberty on the bail bond, and he's unable to practice his profession during a nine and one-half month delay after the arrest."

The State did not present any independent evidence nor did it challenge Page's testimony regarding his anxiety and concerns. While the State cross-examined Page, that cross-examination merely re-iterated Page's testimony that he was embarrassed to drive his child's friends because he thought other parents would judge him, he could not valet park his vehicle because of the interlock, and that he was aware that he was charged with a second offense of DWI. The State, did, however, argue to the trial court that the reason for the delay should not be charged to the State because the State did not control the trial court settings. The State also filed a written response to Page's motion urging that it be denied.[4]

After considering the motion for a few days, and hearing further arguments from both the defense and prosecution, the trial court granted Page's motion to dismiss on October 25, 2018. In making its ruling, the trial court said as follows:

> I do think that going down and checking all of the boxes that Barker requires in these analyses they all favor the Defense, as far as I can tell. I've gone through everyone of them carefully many times and since they all do favor one side or the other, there is no use in doing the balancing test that Barker also requires if that had been necessary. So I don't think I have much choice but to grant the Defense's motion.

The trial court subsequently made written findings of fact and conclusions of law in which it applied the four *Barker* factors, though it did not conduct a balancing

---

[4] The copy of the motion that appears in the clerk's record filed with this Court is file stamped November 14, 2018. The place on the motion for a date on the certificate of service is blank. However, the record is clear that the State's response was made available to both the trial court judge and to Page's counsel prior to the trial court hearing argument on the motion and making its ruling.

test of those factors. The trial court concluded that the facts of the case met the *Barker* requirements for dismissal due to lack of a speedy trial.

The State appealed the trial court's ruling to this Court.

## Standard of Review

We review a trial court's ruling on a motion to dismiss based on a speedy trial claim using a bifurcated standard of review. *Gonzales,* 435 S.W.3d at 808. We give almost complete deference to a trial court's historical findings of fact that are supported by the record. *Id*. at 808–09; *State v. Thomas*, 453 S.W.3d 1, 3 (Tex. App.—Dallas 2014, no pet.). Further, we view all of the evidence in favor of the trial court's ultimate ruling. *Cantu*, 253 S.W.3d at 282.

We review de novo a trial court's determination of whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis. *Gonzales*, 435 S.W.3d at 808–09. The balancing test applied under *Barker* is also a purely legal question which we review de novo. *Id*.; *Cantu*, 253 S.W.3d at 282.

## Presumptively Prejudicial Delay

As noted above, before a speedy trial analysis is triggered, the accused must first make a showing of presumptively prejudicial delay. The length of the delay between an initial charge and trial, or the defendant's demand for a speedy trial, acts as a "triggering mechanism." *Barker* 407 U.S. at 530. Unless the delay is presumptively prejudicial, courts need not consider the other three factors. *Id*.

There is no set or defined period of time that has been held to be a per se violation of a defendant's right to a speedy trial under the Sixth Amendment. *Barker,* 407 U.S. at 529–30; *Cantu,* 253 S.W.3d at 281. Rather, alleged violations are considered on a case-by-case basis and each case is considered on its own merits. *Barker,* 407 U.S. at 529–30; *Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996). The length of delay that will necessitate such an inquiry is dependent upon the peculiar circumstances of the case. *Barker* 407 U.S. at 530-31; *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002). The delay that can be tolerated for an ordinary street crime is considerably less than for a serious, more complex charge. *Barker*, 401 U.S. at 530-31; *Zamorano*, 84 S.W.3d at 649. It is only when the defendant shows that the interval between accusation and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay that a court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Doggett*, 505 U.S. at 652; *Zamorano*, 84 S.W.3d at 648-49.

Here, there is no dispute that Page was arrested on January 5, 2018. Because Page was arrested, his right to a speedy trial began running from that date, as opposed to February 28, 2018, the date on which the information was formally filed. *See United States v. Marion*, 404 U.S. 307, 321 (1971) (stating that "[i]nvocation of the speedy trial provision . . . need not await indictment, information, or other formal charge"); *cf. State v. Hudson*, No. 01-18-00257-CR, 2019 WL 2621739, at *5 (Tex.

App.—Houston [1st Dist.] June 27, 2019, pet. ref'd) (mem. op., not designated for publication) (holding that because the defendant was not placed under arrest on the date of the offense, his right to a speedy trial did not attach until formal charges were filed against him).

Counsel for Page filed his first motion for speedy trial on August 13, 2018; this was just over seven months following his arrest. A motion to dismiss for violation of Page's right to a speedy trial was filed on September 6, 2018, almost exactly eight months following Page's arrest. The first trial setting was scheduled for September 11, 2018, just slightly over eight months from Page's arrest. A hearing was held on Page's motion on October 19, 2018, approximately nine and one-half months following Page's arrest.

At the hearing, Page argued that the delay was over eight months. Page based his argument on the fact that the delay should be considered from Page's arrest on January 5, 2018, until September 11, 2018, which was the first trial setting. Page's counsel characterized this as a nine and one-half month delay after arrest.

The State took the position that there was only a six month delay. The State relied on the time frame between the date the information was filed, February 28, 2018, and the first trial setting on September 11, 2018. However, in its written response to Page's motion, the State conceded that the delay was eight months, but argued that it was not long enough to trigger a *Barker* analysis:

In this case, roughly 45 days had passed before this case was charged by information, and notice of court date was sent 6 months after the initial arrest, and the first court setting was 8 months after the initial arrest. This passage of almost 8 months DOES NOT trigger a Barker inquiry.

The trial court stated that it thought Page presented a "situation that there's been a prima facie showing." In its findings of fact and conclusions of law, the trial court concluded as follows:

> A pretrial delay of eight months is presumptively prejudicial to the defendant *as a matter of law*. Doggett v. United States, 505 U.S. 647, 652 n.1 (1992); Pierce v. State, 921 S.W.2d 291, 294 (Tex. App.— Corpus Christi 1996, no pet.) The eight-month delay in this case therefore triggers an analysis under Barker v. Wingo, 407 U.S. 514 (1972), regardless of the reasons for the delay.

(emphasis added).

In its pleadings to this Court, the State admits that "eight months lapsed between . . . (Page's) . . . arrest and his initial setting." The State argues that an eight month period between arrest and the speedy trial motion is not presumptively prejudicial delay. The State relies on *Doggett*, which observed that delay "approaching one year" is generally held to be presumptively prejudicial, 505 U.S. at 652 n.1, as well as some Texas cases which also state that one year is generally considered to be the delay essential to trigger a *Barker* analysis. *See Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016) (stating that, generally, courts deem delay approaching one year to be "unreasonable enough to trigger the *Barker* enquiry"); *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003) (stating that,

–10–

in general, a delay approaching one year is sufficient to trigger a speedy trial inquiry); *Thomas*, 453 S.W.3d at 4 (same). The State urges this Court to follow the "one year rule" and hold that presumptive prejudice was not established.

The time frame in which a speedy trial analysis is triggered is not as rigid as the State would have this Court hold. As noted above, this is analyzed on an "ad hoc," case-by-case basis; there is no constitutional basis for holding that an accused's speedy trial right can be "quantified into a specified number of days or months." *Haas v. State*, 498 S.W.2d 206, 211 (Tex. Crim. App. 1973). Multiple Texas cases have recognized that a speedy trial analysis can be triggered by a delay of less than one year, but generally more than eight months. *See, e.g.*, *Knox*, 934 S.W.2d at 681 (relying on 2 LaFave & Israel, Criminal Procedure Sec. 18.2(b) (1984) for the proposition that courts generally hold that any delay of eight months or longer is presumptively unreasonable and triggers speedy trial analysis and assumed that a ten month delay was sufficient to trigger a speedy trial analysis under the circumstances of the case); *Zamorano*, 84 S.W.3d at 656 (Keller, P. J., dissenting) (stating that a delay of eight months to a year is generally considered the minimum amount of time to trigger a speedy trial analysis); *Russell v. State*, 90 S.W.3d 865, 872 (Tex. App.—San Antonio 2002, pet. ref'd) (recognizing that generally a delay of eight months or longer is considered presumptively prejudicial for purposes of triggering a speedy trial analysis); *Schenekl v. State*, 996 S.W.2d 305, 312 (Tex. App.—Fort Worth 1999), *aff'd*, 30 S.W.3d 412 (Tex. Crim. App.

–11–

2000) (recognizing that delays exceeding eight months are generally considered presumptively unreasonable and sufficient to trigger a speedy trial analysis); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.) (recognizing that a delay beyond eight months to be presumptively prejudicial); *Pierce v. State*, 921 S.W.2d 291, 294 (Tex. App.—Corpus Christi 1996, no pet.) (stating that most delays of eight months or longer are considered presumptively unreasonable and prejudicial); *Stewart v. State*, No. 05-04-01718-CR, 2005 WL 1607639, at *2 (Tex. App.—Dallas July 11, 2005, no pet.) (not designated for publication) (holding that a delay between arrest and the assertion of a speedy trial violation of "approximately nine months" is presumptively prejudicial); *but see Tasby v. State*, 111 S.W.3d 178, 183 (Tex. App.—Eastland 2003, no pet.) (holding that, under the facts of the case, an interval of eight and one-half months from arrest to trial did not cross the threshold of being unreasonable enough to warrant a *Barker* inquiry).

Further, in *Daniels v. State*, No. 04-18-00474-CR, 2019 WL 1139553, at *3 (Tex. App.—San Antonio Mar. 13, 2019, no pet.) (mem. op., not designated for publication), the State conceded that a delay of "slightly more than eight months" was presumptively prejudicial so as to trigger the *Barker* analysis. As our sister appellate court in San Antonio said: "[b]ecause a little more than eight months passed between the time of arrest and the date the (speedy trial) motion was heard, the delay was beyond the minimum needed to trigger the *Barker* inquiry." *Id.*

We do not take issue with the trial court's recognition that the eight month delay was presumptively prejudicial. We do, however, disagree with the trial court that an eight month delay is presumptively prejudicial *as a matter of law*. The length of delay, for purposes of evaluating when a *Barker* analysis is triggered, must be factored on a case-by-case basis without the imposition of rigid time limitations.

Nevertheless, for purposes of this opinion, we will assume that the delay in this case is sufficient to have triggered a *Barker* analysis.

## *Barker* Analysis

### *Length of Delay*

Once a defendant has triggered a speedy trial analysis, the trial court must consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Doggett*, 505 U.S. at 652; *Barker*, 407 U.S. at 533–34; *Gonzales*, 435 S.W.3d at 809. The presumption that pretrial delay has prejudiced the defendant intensifies over time; the longer the delay, the more a defendant's prejudice is compounded. *Doggett*, 505 U.S. at 652; *Gonzales*, 435 S.W.3d at 809. Consequently, any speedy trial analysis depends first upon whether the delay is more than "ordinary;" if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant. *See, e.g.*, *Balderas*, 517 S.W.3d at 768 (a delay of more than eight years in a capital felony weighs heavily in favor of finding a violation of the defendant's speedy-trial right); *Zamorano,* 84

–13–

S.W.3d at 648–49 (a delay of two years and ten months, in a "plain-vanilla DWI case" was sufficient to trigger a *Barker* analysis).

There is no dispute in this case as to the timeline of events, all of which are correctly reflected in the trial court's findings of fact:

January 5, 2018: Page arrested; his right to a speedy trial began running;

February 25, 2018: information and complaint filed;

July 30, 2018: Notice of trial setting for September 11, 2018;

August 13, 2018: Page filed motion for speedy trial or dismissal;

September 6, 2018: Page filed motion to dismiss;

September 10, 2018: Page requested a reset of the case;

September 11, 2018: first trial setting (not held);

October 19, 2018: Pre-trial hearing on Page's motion to dismiss;

October 25, 2018: Second hearing and dismissal ordered.

No facts were adduced at either hearing to indicate the complexity of this case beyond the fact that the case was a misdemeanor second offense DWI. As a result, even though the delay of eight months may have been sufficient to trigger a *Barker* analysis, this time period is "hardly the overwhelming amount of time that courts have found to weigh heavily against the government." *Zamorano*, 84 S.W.3d at 656 (Keller, P. J., dissenting); *Daniels*, 2019 WL 1139553, at *3. An eight month delay is not an extraordinary delay, but just at or just past the minimum needed to trigger

a *Barker* analysis. While we conclude that this factor weighs against the State, it does so only slightly.

### *Reason for Delay*

With regard to the second *Barker* factor, the reason for the delay, the State has the initial burden to justify a delay. *Barker*, 407 U.S. at 531; *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994). A defendant has no duty to bring himself to trial. *Barker*, 407 U.S. at 527; *Zamorano*, 84 S.W.3d at 651.

When assessing the reasons provided by the State for the delay, a court must allocate different weights to different reasons. *Gonzales*, 435 S.W.3d at 809; *Zamorano*, 84 S.W.3d at 649. The reason for the delay, if any, determines its weight. *See Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 649. Deliberate delays by the State, intended to "hamper the defense," should be weighed heavily against the State. *Balderas*, 517 S.W.3d at 768. Neutral reasons for the delay, such as negligence or overcrowded courts, are also weighed against the State, though not as heavily. *Balderas*, 517 S.W.3d at 768. Valid reasons for the delay, such as a missing witness or engaging in plea negotiations, are justified and not weighed against the State. *State v. Munoz,* 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). Delays attributable to the defendant are not counted against the State. *Id*. The time covered by agreed resets is also to be excluded from speedy trial consideration. *Lopez v. State*, 478 S.W.3d 936, 942 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). If the State fails to offer a reason for the delay, this weighs against the State, but not

heavily, because when the record is silent as to the reason for the delay, we can presume neither willful conduct by the State nor a valid reason for the delay. *Balderas*, 517 S.W.3d at 768; *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

Here, the State offered no reason for the delay. At the original hearing, the State simply argued: "The reason for the delay does not weigh against the State because we don't control the settings."[5] The State gave no reason for the delay in its written response to Page's motion to dismiss. At the second hearing, the State admitted it had no reason to offer for the delay but made its willingness to go to trial known to the trial court:

> [BY THE PROSECUTOR] We can set the case for trial. The State is always ready for trial. We could set it for a date. We could set it right now if we need to. We're not avoiding the defendant's trial. So, again, *while we have no reason to say why the court case was delayed from getting the actual court setting*, the letter for the first setting was sent out in July which was five months after the defendant was actually formerly charged. So we say . . . That's less than eight months, but I understand if the Court already made a ruling. So I'm (sic) wasn't aware of that the speedy trial was already triggered. So I understand the Court already made that ruling and I wasn't aware of that. But, Judge, we ask that the speedy trial motion be denied. And instead, you know, *if there is a remedy, we could set the case for trial because we're ready for that*.

(emphasis added).

---

[5] In oral argument before this Court, the State suggested that the case was simply not set by the court coordinator prior to the July notice. The State admitted that there was nothing in the record to establish how cases are set in the trial court or when and how notice is given to the parties.

The trial court responded to the State's argument, in part, by saying "Well, I understand that and, unfortunately, I think we're past that point to be able to do that . . .." In its written findings of fact and conclusions of law, the trial court concluded as follows:

> The second factor, the reason for the delay, also weighs in favor of the defendant. As conceded in State's Motion to Deny Defendant's Motion for Speedy Trial, the State has "no excuse as to why this case was not scheduled sooner." The State offered no evidence at the hearing to excuse any delay. As a matter of law, the State has the duty to bring the case to trial. *Barker*, 407 U.S. at 527. The State is responsible for the delay between the date of the arrest (January 5, 2018) until October 19, 2018.

While the State's lack of an explanation as to why the case was not set for trial sooner must be held against it, we perceive no deliberate delay by the State and the trial court found none. A lack of an explanation is not as egregious as purposeful delaying tactics and alone is insufficient to show deprivation of the speedy trial right. *See Barker*, 407 U.S. at 521; *Santallan v. State*, 922 S.W.2d 306, 308 (Tex. App.—Fort Worth 1996, pet. ref'd) (stating that negligence on the part of the State as well as overcrowding at the trial court cannot be considered sufficient in and of itself for a finding of a deprivation of the right to a speedy trial); *McCauley v. State*, No. 05-95-01246-CR, 1998 WL 467111, at *4 (Tex. App.—Dallas Aug. 12, 1998, no pet.) (not designated for publication) (stating that negligence by the State is not as bad as purposeful delay tactics and is alone insufficient to show deprivation of the speedy trial right). This is particularly true when considered in light of the State's express

–17–

willingness to set the case for trial immediately. Therefore, we conclude this factor weighs only slightly against the State.

### *Assertion of the Right*

The defendant bears the responsibility to assert his right to a speedy trial. *Cantu*, 253 S.W.3d at 282. The defendant's assertion of his right or his failure to assert his right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of that right. *Balderas,* 517 S.W.3d at 771. The point at which the defendant asserts his right is also important because it may reflect the seriousness of the personal prejudice he is experiencing. *Cantu*, 253 S.W.3d at 284; *State v. Gilliland*, No. 05-16-00547-CR, 2017 WL 3276004, at *3 (Tex. App.— Dallas Aug. 1, 2017, pet. ref'd) (mem. op., not designated for publication). When evaluating a defendant's assertion of the right, the critical question is whether the defendant asserted his right in a manner that indicates a genuine desire for a speedy trial, rather than a desire for dismissal on speedy trial grounds. *See Barker*; 407 U.S. at 534–36; *Balderas,* 517 S.W.3d at 771. The failure to assert the right until trial is imminent strongly indicates that the defendant does not really want a speedy trial and that he was not prejudiced by the lack of one. *Dragoo*, 96 S.W.3d at 314. A motion that requests a dismissal rather than a speedy trial weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one. *Balderas*, 517 S.W.3d at 771; *Zamorano*, 84 S.W.3d at 651 n. 40; *State v. Jones*, 168 S.W.3d 339, 348 (Tex. App. —Dallas 2005, pet. ref'd).

On August 13, 2018, just over eight months after his arrest and one month before the first trial setting, counsel for Page filed a "Motion for Speedy Trial" asking that he "be granted a speedy trial on said charge *or that said information be dismissed* and that the Defendant be released from restraint." (emphasis added). The motion further alleged that Page was "being prejudiced by the State's delay in bringing this case to trial," but no specific instances of prejudice were alleged. The motion contained a signed certificate of service which averred that the motion "has been delivered via electronic filing to the Dallas County District Attorney's Office on this 13th day of August, 2018." There was no sample order attached to the motion for the judge to sign. Nor does the record contain any indication that the motion was presented to the trial court or that Page sought a hearing on this motion. *Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987), *vacated on other grounds,* 488 U.S. 807 (1988) (noting that beyond two motions for speedy trial filed with the district clerk, there was no evidence that the defendant asserted his right to a speedy trial by requesting hearings to present evidence on the matter). In fact, the record is silent as to what action, if any, was taken between the time Page filed his first and second motions to dismiss.

On September 6, 2018, five days before the first scheduled trial setting, counsel for Page filed a "Motion to Dismiss for Violation of Defendant's Right to a Speedy Trial." That motion averred that Page had suffered prejudice as follows: "The Defendant has been required to have an interlock on his car as a condition of

–19–

his bond. The Defendant has been required to go to his interlock provider monthly to have his unit calibrated, which requires him to miss work." In this motion, Page did not reiterate his request for a speedy trial at all but sought only a dismissal. The motion contained an order form for the trial court.

At the hearing on this motion, Page made it clear that the court was hearing his motion for dismissal, not his motion for a speedy trial. Page put the blame for not setting the case for trial on the State:

> [BY DEFENSE COUNSEL] I didn't hear any phone calls, any emails from the State, and they were served a copy of this motion. I didn't get any response saying come on down here and get you something. We'll give you a trial. None of that happened or else they would have put that into evidence. So that didn't happen. I think the Court can assume based on the evidence that the State in the face of a demand for a speedy trial did nothing.

> \*

> It's not incumbent upon us to get a setting.

> \*

> This is the State's prosecution. It is their job to get this case set. It's their job to keep up with their cases.

The State responded as follows: "As far as the assertion of right, the Defense asserted his right to a dismissal before the first setting."

The trial court recessed the hearing for a few days, reconvening on October 25, 2018. At that hearing, Page's counsel argued, in response to the State's written

allegations that he had filed "a vague and boiler plate" motion, that his first motion was a valid request for a speedy trial:

> [BY DEFENSE COUNSEL] [T]here was not a Vague Motion to Dismiss. There was, in fact, a very concise motion for a speedy trial as opposed to a Motion to Dismiss, which as the Court is well aware there's a tremendous amount of significance said under the law and there is a copy of it introduced into evidence as a motion, a demand for a speedy trial, which was actually filed approximately a month even before the first setting. The documents I introduced into evidence showed . . . (the prosecutor) . . . was served that motion on the date that it was filed. When he opened it, I don't know, but it was not a motion to dismiss it was an actual motion for a speedy trial.
>
> *
>
> There was a Motion for a Speedy Trial, an actual motion cogent for asking for a speedy trial, not a dismissal that was filed a month before the first setting. The State did nothing.

As noted above, the State argued that the case could be set for trial at any time and that the State was "not avoiding the defendant's trial."

In its written findings of fact and conclusions of law, the trial court concluded as follows: "The third factor, the assertion of the right, weighs in favor of the defendant. The defendant asserted his right to a speedy trial in a separate motion before he filed his motion requesting solely the dismissal of the information." While the trial court's conclusion accurately reflects the order in which Page requested relief, the trial court's conclusions do not analyze Page's assertion of the right to a speedy trial and the steps he took, if any, to obtain action on that motion.

–21–

Our analysis of these motions, and the manner in which Page pursued relief, strongly suggests to us that Page never wanted a trial at all and that his sole objective was a dismissal of the charges against him.

Page's first motion was filed roughly a month before the first trial setting, just barely over eight months after his arrest. This motion requested first a speedy trial but also, in the alternative, a dismissal. No action was requested or taken on this motion. Page's second motion was filed on September 6, 2018, just five days before the first trial setting in the case, on September 11, 2018; that motion requested nothing but a dismissal. Nothing in the record indicates the case could not have gone to trial as scheduled on September 11, 2018, or that that the case could not have gone to trial before October 19, 2018, the date of the actual hearing on Page's motion to dismiss. Page did not agree to a trial date even after the State expressed its willingness to go to trial as soon as possible at the October 25, 2018, hearing.

We do not perceive a genuine desire on Page's part to have a trial. Rather, it is clear, both from the timing and content of Page's pleadings as well as the arguments made at the hearings, that Page's true objective was a dismissal of the charges against him as opposed to a trial. This factor weighs against Page.

### Prejudice to the Defendant

The last *Barker* factor is prejudice to the defendant. *Barker*, 407 U.S. at 532-33; *Munoz*, 991 S.W.2d at 826. The prejudice factor is assessed in light of the interests the right to a speedy trial is designed to protect: (1) preventing oppressive

pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper*, 520 S.W.3d at 924. The third interest, impairment of the defense, is the most serious because it "skews" the fairness of the entire system. *Munoz*, 991 S.W.2d at 826; *see also Jones*, 168 S.W.3d at 349. Affirmative proof of particularized prejudice is not essential to every speedy trial claim because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Hopper,* 520 S.W.3d at 924. If, however, an accused can show prejudice, the burden shifts to the State to prove that the accused suffered no serious prejudice beyond that which ensued from ordinary and inevitable delay. *Munoz*, 991 S.W.2d 818.

Because Page was on bond pending trial, he was not subjected to any incarceration, much less oppressive pretrial incarceration. Page neither alleged, nor attempted to prove, that his defense was impaired by the delay. Hence, Page could only make a claim for a violation of his right to a speedy trial due to his anxiety and concern.

While general pre-trial anxiety and concern is considered relevant to the prejudice factor, that alone will not suffice to prove prejudice, especially when it is no greater anxiety or concern than the level normally associated with a criminal charge or investigation. *Cantu*, 253 S.W.3d at 286. Any anxiety or concern cited by the defendant must be unusual, as some anxiety and concern is inevitable, regardless of any delay. *See Shaw*, 117 S.W.3d at 890 (concluding that the prejudice factor

–23–

weighed against the defendant where his only demonstrated anxiety, "mental anguish," did not rise above the level normally associated with the charged offense of aggravated sexual assault); *cf. Zamorano*, 84 S.W.3d at 653-54 (concluding that the prejudice factor weighed in favor of the defendant where the defendant, a day laborer, had missed at least eleven days of work due to court appearances, had lost wages, and had checked in weekly with his bail bondsman late at night after work every Tuesday for four years while his case was reset multiple times).

The reasons offered by Page to support his allegations of prejudice all centered on the impact that the interlock device on his vehicle had on his lifestyle. Page testified that the interlock device caused him anxiety as a parent to his five-year-old son because he was "not able to drive my child and his friends and classmates to any of their activities for fear that one of them will tell their parents and I'll be judged as not being able to perform my parental duties properly." Page also testified that the interlock device caused him anxiety because he could not valet park his vehicle when meeting clients and business associates at a hotel or restaurant. He often had to use Uber or have someone drive him which he did not feel showed "good form" in front of business associates. The device would "beep" when he was on the telephone in his vehicle and he would have to make up an excuse for that or hang up the phone. He testified that the interlock device affected his ability to perform his occupation as it interfered with his ability to raise capital and sell the business; this was very stressful. As he testified "it's a harm in presentation with the people that I do

business with, and it affects my income if I'm not able to perform my job function."

He did not, however, testify as to any particular instance where he suffered a loss of income or a business opportunity that resulted from the interference and inconvenience caused by the interlock device.

In its written findings of fact and conclusions of law, the trial court concluded that Page had suffered prejudice as follows:

> The fourth factor, the prejudice to the defendant, also weighs in the defendant's favor. The defendant showed that he was prejudiced by his interlock bond condition and by pre-trial anxiety. Had he not been restrained by the interlock bond condition, he could have valeted his car, driven clients to lunch, and driven his five-year-old's friends around without fear of judgment or embarrassment. The Defendant has met his burden to show that he has suffered some concern or anxiety as a result of his pretrial delay. *See Zamorano v. State*, 84 S.W.3d 643, 653-54 (Tex. Crim. App. 2002). Because the defendant met his burden under this factor, it weighs in his favor.

The trial court specifically found that, during the time Page was on bond, he "has suffered much anxiety and has altered his behavior to avoid embarrassment associated with his interlock" and that Page had "altered his conduct and his personal life" by not valet parking his vehicle, not driving clients to lunch, and avoiding driving his five-year-old's friends.

It was established that this was Page's second arrest for DWI. The ignition interlock device about which Page complained is required by statute for DWI repeat offenders. *See* TEX. CODE CRIM. PROC. ANN. art. 17.441. As such, the interlock device was merely a condition of Page's bond. Hence, any anxiety, inconvenience,

or embarrassment caused by that device is not beyond that which would normally be experienced by any defendant on bond for a second DWI offense.

The trial court also found that the interlock device "has affected the defendant's ability to raise capital for his business and perform his job duties." The record, however, does not support the inference that Page's work life was impacted to any abnormal or burdensome degree. It merely shows that Page is a businessman who feels like he has lost unspecified income or opportunities because he either had a driver take him to business lunches or did not feel like he could valet park his vehicle for several months. This does not rise to the level of prejudice contemplated by *Barker*.

We conclude Page presented no evidence that any trial delay caused him anxiety or concern beyond what would ordinarily result from any person being arrested and charged with a second DWI offense. The record shows only that Page was embarrassed and inconvenienced by the interlock device which was a condition of his bond; the installation and operation of that device was not delaying Page's trial. Page has failed to establish a level of prejudice sufficient to meet the fourth *Barker* factor. This factor weighs against Page.

### Balancing the Four *Barker* Factors

In its written findings of fact and conclusions of law, the trial court concluded as follows: "Each of the four *Barker* factors weighs in the defendant's favor, so there

is no need to balance them." The trial court conducted no balancing of the *Barker* factors.

That is an incorrect application of *Barker*. The four *Barker* factors are related and must be considered together along with any other relevant circumstances. *Cantu*, 253 S.W.3d at 281; *Gilliland*, 2017 WL 3276004, at *8. Indeed, the last step in a proper *Barker* analysis is to balance the four factors. *Gilliland*, 2017 WL 3276004, at *8. Because dismissal of the charges is a radical remedy, we must apply the balancing test with common sense and sensitivity to ensure that charges are dismissed only when evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Balderas*, 517 S.W.3d at 773; *Cantu*, 253 S.W.3d at 281; *Gilliland*, 2017 WL 3276004, at *8. This balancing test is a purely legal question. *Cantu*, 253 S.W.3d at 282; *Zamorano*, 84 S.W.3d at 648 n. 19.

Of the four factors, we have found that two weigh slightly against the State: the length of the delay and the reason, or lack thereof, for the delay. The delay in this case was the minimal amount of time at which a court will consider that a speedy trial claim has been triggered. While the State offered no reason for the delay, the State expressed a willingness to proceed to trial as soon as possible. Moreover, the final month of delay was due to Page's action by resetting the hearing on his motion to dismiss. While these factors weigh against the State, they do not weigh heavily in Page's favor.

The third factor, assertion of the right, weighs against Page. While Page filed a motion asking for a speedy trial, in that same motion he sought a dismissal as alternative relief; he also made only a general assertion of prejudice. There is nothing in the record to suggest that this motion was called to the trial court's attention or that Page attempted to set a hearing on the motion. Less than thirty days later he filed a motion for dismissal. His arguments to the trial court were made in favor of dismissal and not a speedy trial. From this record we conclude that Page's true objective was a dismissal of the charges against him as opposed to a trial.

The fourth factor, prejudice, also weighs against Page. Page presented no evidence that any trial delay caused him any anxiety and concern beyond what would ordinarily result from any person being arrested and charged with a second DWI offense. While Page was embarrassed and inconvenienced by the interlock device, that was due to the interlock device being a condition of his bond, not a factor delaying his trial. On balance, Page cannot overcome the fact that he suffered no abnormal anxiety or concern and hence no prejudice.

We conclude that, when balanced, the *Barker* factors weigh against finding a speedy trial violation and that the trial court erred in granting Page's motion to dismiss. We reverse the trial court's order granting the motion to dismiss and remand the case to the trial court for further proceedings.

## Conclusion

The trial court's order granting Page's motion to dismiss is reversed and the case is remanded to the trial court.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)
181391F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-01391-CR　　V.

THOMAS HUGHES PAGE, Appellee

On Appeal from the County Criminal Court
No. 1, Dallas County, Texas
Trial Court Cause No. MA1851150A.
Opinion delivered by Justice Osborne.
Justices Myers and Nowell participating.

　　　Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered April 17, 2020