

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00165-CR

———————————————————

CASEY JOE COCHNAUER, Appellant

V.

THE STATE OF TEXAS

———

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 60,089-B

———

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Casey Joe Cochnauer appeals his conviction for two counts of indecency with a child. *See* Tex. Penal Code Ann. § 21.11(a)(1), (a)(2)(A). In two issues, Cochnauer—who represented himself with the assistance of standby counsel at trial—argues that the trial court deprived him of two Sixth Amendment rights: right to counsel and right to a speedy trial. We will overrule Cochnauer's issues and affirm the trial court's judgment.

## I. Background

In early 2016, two brothers made an outcry about indecencies that Cochnauer had committed against them in early 2011 when they were thirteen and ten years old, respectively.[1] A Wichita County magistrate issued arrest warrants in February 2016 for Cochnauer, who had been incarcerated since 2012 at the Texas Department of Criminal Justice's Kyle Facility on unrelated charges. The warrants were served on Cochnauer in May 2018 at that facility. Cochnauer was tried and convicted of the indecency charges in April 2019, and the trial court sentenced Cochnauer in accordance with the jury's punishment assessments.

Cochnauer timely appealed. We will address his two Sixth Amendment issues in reverse order.

---

[1]Because evidentiary sufficiency is not an issue, we provide only the facts needed to dispose of this appeal.

## II. Sixth Amendment Right to a Speedy Trial

In his second issue, Cochnauer contends that the three-year delay between the February 2016 issuance of the arrest warrants and his April 2019 trial violated his Sixth Amendment right to a speedy trial. *See* U.S. Const. amend VI. He argues that under the four-factor balancing test set out in *Barker v. Wingo*, he is entitled to a dismissal of the charges against him. *See* 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014). To assist in evaluating Cochnauer's speedy-trial claim, we will set out a detailed timeline below.

### A. Speedy-Trial Facts

- Early 2011, Cochnauer commits indecency with a child.

- April 20, 2012, Cochnauer begins serving an eight-year sentence for felonies unrelated to this case.

- Early 2016, the two complainants make their outcries.

- February 26, 2016, a magistrate issues two warrants for Cochnauer's arrest.

- February 29, 2016, the Kyle Facility receives the warrants.

- May 6, 2018, the State receives a prosecution report for the 2011 offenses.

- May 7, 2018, the arrest warrants are executed on Cochnauer.

- May 8, 2018, the magistrate conducts a probable-cause hearing, issues warnings to Cochnauer, and orders bond.

- May 10, 2018, the trial court appoints Michael Valverde as Cochnauer's counsel.

- June 7, 2018, a grand jury indicts Cochnauer on two counts of indecency with a child. Cochnauer is served with a copy of the indictment.

- June 12, 2018, the State announces "ready" for trial.

- June 15, 2018, Valverde waives pretrial arraignment, and Cochnauer enters a "not guilty" plea.

- September 19, 2018, Valverde moves for the appointment of an investigator.

- October 19, 2018, Valverde announces "not ready" at docket call.

- November 16, 2018, Valverde announces "ready" at docket call.

- January 11, 2019, Valverde files a motion in limine.

- February 1, 2019, Cochnauer begins filing pro se motions.

- February 11, 2019, Cochnauer files his pro se "Motion to Dismiss Due to Violation of the Interstate Agreement on Detainers Act" (the "IADA motion").

- February 25, 2019, Cochnauer files his pro se Sixth Amendment speedy-trial motion.

- March 1, 2019, Valverde moves to withdraw as counsel.

- March 7, 2019, after a hearing, the trial court denies Valverde's motion to withdraw.

- March 11, 2019, after a hearing, the trial court grants Valverde's motion to withdraw, grants Cochnauer's pro se Sixth Amendment speedy-trial motion, and orders a special setting for trial on April 22, 2019.

- March 21, 2019, Cochnauer amends his IADA motion to add a complaint under the (federal) 1974 Speedy Trial Act.

- April 12, 2019, after a hearing, the trial court denies Cochnauer's amended IADA motion and moves the trial to April 23, 2019.

- April 23, 2019, Coachnauer's trial begins.

## B. Error Preservation

Speedy-trial complaints are subject to error-preservation requirements. *See Henson v. State*, 407 S.W.3d 764, 768–69 (Tex. Crim. App. 2013). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013).

5

Here, Cochnauer raised speedy-trial complaints in two pro se motions. Cochnauer's first motion—filed on February 25, 2019, and heard on March 11, 2019—raised a Sixth Amendment speedy-trial complaint. In that motion, Cochnauer requested alternate forms of relief: "trial set for a date on or before the 8th of May 2019, *or*, if a trial is not set on or before said date, Cause No. 60089-B*1-2 . . . be dismissed on the ground that the defendant has been denied the Constitutional Right to a Speedy Trial." [Emphasis added.] The trial court granted Cochnauer's motion and set the trial for April 22, 2019.[2] Because the trial court granted Cochnauer one form of his requested relief—a trial setting on or before May 8—there is no error for us to review. *See Hill v. State*, 213 S.W.3d 533, 538 (Tex. App.—Texarkana 2007, no pet.); *Cline v. State*, 685 S.W.2d 760, 761–62 (Tex. App.—Houston [1st Dist.] 1985, no pet.).

Cochnauer's second speedy-trial motion—the amended IADA motion—asked the trial court to dismiss the case based on the "Speedy Trial Act of 1974" and the IADA, neither of which applies to this case. The Speedy Trial Act is a federal statute that does not govern state-court prosecutions. *See* 18 U.S.C.A. §§ 3161–74. The IADA is inapplicable because Cochnauer's case does not involve an interstate detainer. *See* Tex. Code Crim. Proc. Ann. art. 51.14.

Regardless, presenting a statutory speedy-trial claim to the trial court does not preserve error on a claim that the State violated an appellant's constitutional right to a

---

[2]The trial court later moved the trial's start date to April 23, but regardless, the trial court still granted Cochnauer's requested relief: trial on or before May 8, 2019.

speedy trial. *See Dunn v. State*, 819 S.W.2d 510, 526 (Tex. Crim. App. 1991); *Check v. State*, 543 S.W.3d 883, 887 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial."). Cochnauer's second speedy-trial motion thus did not preserve his Sixth Amendment speedy-trial complaint for our review.

But even if Cochanuer had preserved his Sixth Amendment speedy-trial complaint, application of the *Barker* factors shows no speedy-trial violation.

### C. *Barker* Factors

To determine when a Sixth Amendment speedy-trial violation occurs, appellate courts apply a balancing test using the *Barker* factors. *See* 407 U.S. at 530, 92 S. Ct. at 2192; *Gonzales*, 435 S.W.3d at 808 (reciting the *Barker* factors). Appellate courts weigh: (1) the length of delay, (2) reasons for the delay, (3) the defendant's assertion of his speedy-trial right, and (4) prejudice to the defendant because of the delay. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. The conduct of the State and defendant are weighed under each factor, though no single factor alone is necessary or sufficient to establish a speedy-trial violation. *Hurdsman v. State*, No. 02-17-00319-CR, 2018 WL 5832116, at *3 (Tex. App.—Fort Worth Nov. 8, 2018, pet. ref'd) (mem. op., not designated for publication).

The first factor—length of delay—is, to an extent, a triggering mechanism for the remaining factors. *Santallan v. State*, 922 S.W.2d 306, 307 (Tex. App.—Fort Worth

7

1996, pet. ref'd). The "speedy-trial clock" starts only when a formal indictment, information, or actual arrest occurs. *Id.* (citing *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971)). When, as here, there is no prearrest indictment, the calculation does not include the period before arrest. *See id.* (excluding four years between issuance and execution of arrest warrants from delay calculation).

Here, although a magistrate issued the arrest warrants for Cochnauer in February 2016, his actual arrest did not occur until May 7, 2018. The trial began less than a year later on April 23, 2019. The almost year-long delay between Cochnauer's arrest and the start of his trial does weigh slightly against the State and is enough to trigger an analysis of the remaining *Barker* factors. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003) ("In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" (quoting *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992))).

When assessing the second factor—reasons for delay—different weight is given to different reasons. *Gonzales*, 435 S.W.3d at 809. For instance, deliberate delays to hamper the defense will weigh more heavily against the State than more neutral reasons such as negligence or overcrowded dockets, which will still weigh against the State but less heavily. *Id.*

Cochnauer does not argue that the delay was the result of deliberate conduct; instead, he complains that the State failed to explain the more than two-year delay between the February 2016 arrest warrants and his May 2018 arrest. But as we have

explained, the "speedy-trial clock" did not start to run until Cochnauer's arrest. In addition, the State announced "ready" in June 2018, the month after Cochnauer's arrest. This factor does not weigh against the State.

The third factor—assertion of the speedy-trial right—concerns whether and how a defendant asserts the right. *Id.* at 810. Delay in asserting a speedy-trial right weighs against a defendant, as does requesting dismissal rather than trial. *See Dragoo*, 96 S.W.3d at 314–15; *see also Murphy v. State*, 280 S.W.3d 445, 454 (Tex. App.—Fort Worth 2009, pet. ref'd) (filing for dismissal weakens a speedy-trial claim because it shows a desire for no trial instead of a speedy trial). Here, Cochnauer waited until nine months after his arrest to assert his speedy-trial right. And only after the trial court had granted his request for a speedy trial and specially set his case for trial two months later did Cochnauer seek dismissal, which undermines his claim of a speedy-trial violation. This factor thus weighs against Cochnauer.

The final *Barker* factor—prejudice—is assessed in light of what the speedy-trial right is designed to prevent: oppressive pretrial incarceration, a defendant's anxiety and concern, or impairment of a defense. *Dragoo*, 96 S.W.3d at 315. Impairment of a defense is the most serious, as an inability to adequately prepare for trial skews the fairness of the justice system. *Id.* (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). Actual prejudice is not required, but the defendant must show some prejudice caused by the delay. *McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973) (citing *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973)).

Here, Cochnauer claims prejudice in the form of testimonial inconsistencies, anxiety and concern due to a "detainer," and necessary witnesses' being "gone."[3] To show prejudice based on unavailable witnesses, Cochnauer must show their unavailability at trial, that their testimony may be material and relevant to his case, and that he exercised due diligence in attempting to produce them for trial. *See id.* The record shows that Cochnauer's trial subpoenas were returned or unserved because witnesses changed jobs or Cochnauer withdrew the subpoena. Yet this does not establish that the witnesses were unavailable at trial because of the delay between Cochnauer's arrest and trial. Nor does it establish the relevance and materiality of those witnesses' testimonies to Cochnauer's case. Cochnauer cannot satisfy his burden of prejudice in this case.

---

[3]Regarding Cochnauer's anxiety, he was already incarcerated on unrelated charges. Evidence of general anxiety is relevant but not sufficient proof of prejudice under *Barker*, especially when the anxiety is no greater than what is normally associated with a criminal investigation. *See Thames v. State*, No. 02-17-00295-CR, 2019 WL 237556, at *10 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op., not designated for publication). Moreover, there is no evidence that Cochnauer's anxiety, if any, resulted from the delay in this case as opposed to his incarceration for the unrelated charges. *See id.*

Cochnauer also complains that the delay caused inconsistencies in the complaining witnesses' stories. But these inconsistencies could have damaged the State's case too, as well as providing a basis for Cochnauer to challenge the witnesses' credibility at trial—which he did. *Cf. Rivera v. State*, 990 S.W.2d 882, 892 (Tex. App.—Austin 1999, pet. ref'd) ("Time can damage either side's case, and it is often impossible to determine which side has been prejudiced more severely.").

10

Balancing the *Barker* factors (even if necessary to do), we conclude that Cochnauer's speedy-trial right was not violated. We overrule Cochnauer's second issue.

## III. Sixth Amendment Right to Counsel

In his first issue, Cochnauer argues that the trial court deprived him of his Sixth Amendment right to counsel. He claims that the trial court unconstitutionally "dragooned" and "commandeered" him into representing himself at trial because (1) he did not clearly and unequivocally assert his right to defend himself and (2) he did not competently, knowingly, and intelligently waive his right to counsel. We disagree.

## A. Applicable Law

While the Sixth Amendment guarantees the right to counsel, it also implies a right of self-representation. *Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533 (1975). That right must be timely, clearly, and unequivocally asserted. *Id.* at 835, 95 S. Ct. at 2541; *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex. Crim. App. 1984) (asserting self-representation right before a jury is empaneled is timely). When the plain, ordinary, and generally accepted meaning of an accused's statements signify a desire to proceed pro se, the right is clearly and unequivocally asserted. *See Lathem v. State*, 514 S.W.3d 796, 808 (Tex. App.—Fort Worth 2017, no pet.) (holding that "I'll name myself as counsel" is a clear and unequivocal assertion of self-representation right). If the self-representation right is clearly and unequivocally asserted, the trial

court should inform the accused about the dangers and disadvantages of self-representation so that the record will reflect that the accused "knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 242 (1942)).

Exercising the self-representation right necessarily means voluntarily, knowingly, and intelligently waiving the opposite right to counsel. *Lathem*, 514 S.W.3d at 802–03. Courts will indulge every reasonable presumption against waiver of the right. *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008). To assess an effective waiver, courts consider the totality of the circumstances. *Id. Faretta* does not mandate questioning on the accused's age, education, background, or previous mental history, but the record must contain proper admonishments about pro se representation. *Blankenship*, 673 S.W.2d at 583. *Faretta* admonishments are not required when standby counsel is appointed and utilized. *Alexander v. State*, No. 02-15-00033-CR, 2016 WL 2586602, at *3 (Tex. App.—Fort Worth May 5, 2016, pet. ref'd) (mem. op., not designated for publication); *Dolph v. State*, 440 S.W.3d 898, 907 (Tex. App.—Texarkana 2013, pet. ref'd); *Rainwater v. State*, 634 S.W.2d 67, 68 (Tex. App.—Fort Worth 1982, no pet.); *see also Clark v. State*, 717 S.W.2d 910, 918 (Tex. Crim. App. 1986) (stating that *Faretta* admonishments are not required for hybrid representation).

## B. Analysis

On May 10, 2018, the trial court appointed Valverde to represent Cochnauer. Over the next eight months, Valverde filed several motions on Cochnauer's behalf. Cochnauer began filing his own motions in February 2019.

In early March 2019, Valverde moved to withdraw, explaining that (1) Cochnauer had expressed dissatisfaction with Valverde's services; (2) Cochnauer had filed motions against Valverde's advice; and (3) Valverde could no longer effectively communicate with Cochnauer. At the March 7, 2019 hearing on his motion, Valverde explained that he had met with Cochnauer multiple times, had reviewed evidence with him, and had advised Cochnauer to let him review any further pro se motions. Cochnauer had agreed but continued to file various motions.[4] Valverde then asked permission to withdraw as he was unable to "aggressively and zealously" represent Cochnauer.

Cochnauer stated that he did not object to Valverde's withdrawal. The trial court twice lauded Valverde's qualifications as a defense attorney before asking Cochnauer if he wanted to represent himself. Cochnauer replied, "No, sir, *not at this time*." [Emphasis added.] The trial court lamented how long the case had been pending

---

[4]Cochnauer filed a grievance against Valverde because he refused to file more motions on Cochnauer's behalf. Valverde revealed this to the trial court, but the court still denied the withdrawal motion. Personality conflicts and disagreements about trial strategy are typically not valid grounds for withdrawal. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000).

and expressed concern that granting a withdrawal motion "at this late date on the eve of trial" might cause further delay, ultimately denying Valverde's withdrawal.

At a motions hearing four days later on March 11, 2019, Cochnauer told Valverde that he wanted to represent himself. Valverde relayed this to the trial court, which then addressed Cochnauer:

> THE COURT: Mr. Cochnauer, we can do one of two things. Either Mr. Valverde can represent you or you can represent yourself. . . . Which do you want to do?
>
> Mr. Cochnauer: Sir, at this moment I feel like *I'm going to have to represent myself.* [Emphasis added.]

After Cochnauer expressed this desire, the trial court questioned Cochnauer about his education, his familiarity with Texas's evidence laws, and his work experience. Cochnauer explained that he had a high-school education with some college courses, that he had a 120 IQ, that he was familiar with the Texas Rules of Evidence, and that he had worked in construction and as a tradesman. The trial court then twice admonished Cochnauer that he would "get no help from the Court or anyone else" if he represented himself, and that he would be "standing on [his] own knowledge and [his] own objections to evidence." After every question and warning, Cochnauer replied, "Yes, sir." When the trial court asked if Cochnauer had ever represented himself in a legal matter, Cochnauer replied, "No, sir, but for the last two years and two months, I've spent two hours a day, three days a week inside the law

14

library in the Texas Department of Criminal Justice *preparing for this moment.*" [Emphasis added.]⁵

The colloquy ended with the trial court's advising Cochnauer that proceeding pro se was ill-advised because if he did not make the proper pleadings, potential defenses might be waived. Cochnauer again replied, "Yes, sir." The trial court again advised Cochnauer not to represent himself, cautioned him that he would be prone to errors, and warned him that his decision to represent himself was final: "*If* we get to April 20th and you tell the Court that you *now* want to be represented by somebody, you've already waived that right today."⁶ [Emphasis added.] Cochnauer replied that he had made his decision. The trial court then appointed Mark Barber as Cochnauer's standby counsel. Cochnauer stated he had only four specific questions for standby counsel but "[o]utside of that, *I am prepared. I was prepared for tomorrow.*" [Emphasis added.]

---

⁵Cochnauer stated two other times during questioning that he "fought for three years to get to where we are," and that "I feel the only way that I'm going to get a proper defense is -- As I said, I've prepared for this for three years, Your Honor."

⁶The trial court made this final admonishment after an off-the-record conversation with Cochnauer about trial delays. The admonishment could be read as a misstatement about withdrawing a waiver of counsel if read literally as Cochnauer urges. But read contextually and in light of the trial court's concern about further trial delays, the admonishment was correct about a trial court's exercising discretion in denying a withdrawal waiver if withdrawal would cause unnecessary trial delays. *See Robles v. State*, 577 S.W.2d 699, 704 (Tex. Crim. App. [Panel Op.] 1979) (demanding different counsel or dismissal of counsel on the day of trial would be manipulating the right to counsel to obstruct the orderly procedure of courts and fair administration of justice.).

Here, Cochnauer clearly, timely, and unequivocally asserted his right of self-representation. At the March 11, 2019 hearing, Cochnauer stated, "I feel like I'm going to have to represent myself," after Valverde asked the court to take up his pro se argument.[7] From there, Cochnauer proceeded to file more pro se motions, attend additional pretrial hearings, participate in voir dire, and represent himself throughout the entire trial. Moreover, the trial court appointed—and Cochnauer utilized—standby counsel.[8] *Faretta* admonishments were not required in this case because Cochnauer received and utilized standby counsel.[9] *See Dolph*, 440 S.W.3d at 907;

---

[7]Cochnauer argues on appeal that he did not unequivocally maintain his right of self-representation. The record must reflect a defendant's waiver of self-representation after the right is asserted. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986) ("A waiver may be found if it reasonably appears to the court that [the] defendant has abandoned his initial request to represent himself.") (quoting *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982)). Cochnauer's cited record references do not reflect Cochnauer's abandoning his initial request to represent himself. At most, the references show Cochnauer's brief confusion and the trial court's and the State's attempting to patiently assist Cochnauer in proper court procedure.

[8]Before and during trial, Cochnauer asked questions and conferred with his standby counsel, allowed his standby counsel to challenge during voir dire, and requested assistance issuing subpoenas and drafting legal forms.

[9]Yet even if we held that more specific inquiries were required in this case, the court's colloquy properly informed Cochnauer of the dangers of pro se representation and yielded evidence that Cochnauer knowingly, intelligently, and voluntarily waived his right to counsel. The trial court's questioning revealed: (1) Cochnauer completed high school and had taken some college courses; (2) Cochnauer stated affirmatively that he was familiar with Texas evidence laws and was knowledgeable enough to make proper objections to evidence; (3) Cochnauer worked in construction and as a tradesman; (4) Cochnauer spent the last two years and two months spending two hours a day, three days a week in the TDCJ law library preparing for this moment.

16

*Rainwater*, 634 S.W.2d at 68; *see also Clark*, 717 S.W.2d at 918. We thus overrule Cochnauer's first issue.

## IV. Conclusion

Having overruled Cochnauer's two issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 2, 2021

---

Additionally, the trial court asked Cochnauer at a previous pretrial hearing if he wanted to represent himself, and he said "no." Cochnauer then had four days to contemplate the idea of pro se representation before asserting his right to self-representation for the first time at the March 11, 2019 pretrial hearing. Furthermore, the court warned Cochnauer, twice, that proceeding pro se is ill-advised and that Cochnauer might waive potential defenses. These admonishments were enough to put Cochnauer on notice of the challenges and dangers of pro se representation and to give the trial court a chance to assess Cochnauer's competency before allowing him to waive his right to counsel.